**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**GORDON VANCE JUSTICE, JR. ET AL.**                                    **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO.: 3:11-CV-138-SA-SAA**

**DELBERT HOSEMANN, in his official capacity as
Mississippi Secretary of State; JIM HOOD, in his
official capacity as Attorney General of the State
of Mississippi**                                                         **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiffs have moved for a temporary restraining order and/or preliminary injunction to enjoin enforcement of Mississippi's political committee and individual registration, reporting, and disclosure laws (MISS. CODE ANN. §§ 23-17-47 *et seq*. and MISS. CODE ANN. §§ 23-15-801 *et seq*.). Plaintiffs contend these statutes impose an unconstitutional infringement on their rights to free speech and association. This Court held a hearing on November 1, 2011, and heard arguments from both sides. For the following reasons, the Court denies the motion.

### FACTUAL BACKGROUND

Plaintiffs are "a group of like-minded friends and neighbors" who have been meeting regularly for the past few years, as a group and with others, to discuss the political issues of the day. According to Plaintiffs, they "have no formal organization or structure. They meet at their homes, at restaurants, and wherever else is convenient. They have no officers or directors, no bank account, and no member dues." Plaintiffs wish to associate with one another and with others for the purposes of running independent political advertisements advocating the passage of Initiative 31, a proposed amendment to the Mississippi Constitution which will be decided by popular vote in the upcoming election on November 8, 2011. Initiative 31 would "amend the Mississippi Constitution to prohibit

state and local government from taking private property by eminent domain and then conveying it to other persons or private businesses for a period of 10 years after acquisition. Exceptions from the prohibition include drainage and levee facilities, roads, bridges, ports, airports, common carriers, and utilities. The prohibition would not apply in certain situations, including public nuisance, structures unfit for human habitation, or abandoned property."

Specifically, Plaintiffs "wish to pool their funds to purchase posters, buy advertising in a local newspaper, and distribute flyers targeted to Mississippi voters, urging them to vote for the passage of Initiative 31." However, according to Plaintiffs, to undertake these activities, Plaintiffs would have to register as a "political committee" under Mississippi's campaign finance laws and comply with administrative, reporting, and disclosure requirements such as appointing a formal treasurer, filing a statement of organization, and filing regular reports with the State listing their names, addresses, occupations, and employers and the same information of anyone else who decides to add more than $200 to their cause. Plaintiffs contend that these laws substantially burden and chill the Plaintiffs' and others' rights to free speech under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs wish to pool funds in excess of $200 and spend money on speech that supports Initiative 31, but claim they are inhibited from doing so because it would trigger Mississippi's campaign disclosure requirements. Plaintiffs contend that even purchasing a 1/4 page advertisement in the local newspaper for one day would cost more than $200 and trigger the reporting and disclosure requirements of MISS. CODE ANN. §§ 23-17-47 *et seq.* and MISS. CODE ANN. §§ 23-15-801 *et seq.*

Plaintiffs filed the instant lawsuit on October 20, 2011, seeking a declaratory judgment that MISS. CODE ANN. §§ 23-17-47 *et seq.* and MISS. CODE ANN. §§ 23-15-801 *et seq.* are

2

unconstitutional on their face and as applied, as well as an injunction prohibiting their enforcement. On the same day, Plaintiffs also filed a motion for a Temporary Restraining Order (TRO) & Preliminary Injunction [3]. The State filed its response on October 27, 2011. At the hearing held on November 1, 2011, Plaintiffs announced that they seek an injunction prohibiting enforcement of Mississippi's political committee and individual registration, reporting and disclosures laws, as they apply to Plaintiffs, for contributions and expenditures of less $1,000 in support of Initiative 31.[1]

## STATUTORY FRAMEWORK

At issue are two sets of statutes mandating registration and disclosure of expenditures and contributions in support of or opposition to ballot measures: MISS. CODE ANN. §§ 23-15-801 *et seq.* and MISS. CODE ANN. §§ 23-17-47 *et seq.* The provisions of the statutes Plaintiffs contend are applicable to them are as follows:

1. MISS. CODE ANN. §§ 23-15-801 *et seq.*

Section 23-15-801(c) defines a "political committee" as "any committee, party, club, association, political action committee, campaign committee or other groups of persons or affiliated organizations which receives contributions aggregating in excess of Two Hundred Dollars ($200.00) during a calendar year or which makes expenditures aggregating in excess of Two Hundred Dollars ($200.00) during a calendar year for the purpose of influencing or attempting to influence the action of voters for or against . . . balloted measures." MISS. CODE ANN. § 23-15-801(c). No later than

---

[1]Although Plaintiffs' Motion asks the Court to enjoin Mississippi's registration and disclosure laws "as they apply to the Plaintiffs," the request for the Court to set a $1,000 threshold was presented for the first time at the hearing. Plaintiffs also bring a facial challenge in their Complaint, but have not argued that as a basis for granting their requested TRO and preliminary injunction.

ten days after "receipt of contributions aggregating in excess of Two Hundred Dollars ($200.00), or . . . having made expenditures aggregating in excess of Two Hundred Dollars ($200.00)," each political committee must file a "statement of organization" with the Secretary of State's Office, containing: (1) the name and address of the committee and all officers and (2) a designation of a director of the committee and a custodian of books and accounts of the committee, who shall be designated treasurer. MISS. CODE ANN. § 23-15-803.

Additionally, political committees must file pre-election reports, periodic reports every four years, and yearly reports in the three years between periodic reports. MISS. CODE ANN. § 23-15-807(b). These reports must include:

(i) For the reporting period and the calendar year, the total amount of all contributions and the total amount of all expenditures of the candidate or reporting committee which shall include those required to be identified pursuant to item (ii) of this paragraph as well as the total of all other contributions and expenditures during the calendar year. Such reports shall be cumulative during the calendar year to which they relate;

(ii) The identification of:

1. Each person or political committee who makes a contribution to the reporting candidate or political committee during the reporting period, whose contribution or contributions within the calendar year have an aggregate amount or value in excess of Two Hundred Dollars ($200.00) together with the date and amount of any such contribution;

2. Each person or organization, candidate or political committee who receives an expenditure, payment or other transfer from the reporting candidate, political committee or its agent, employee, designee, contractor, consultant or other person or persons acting in its behalf during the reporting period when the expenditure, payment or other transfer to such person, organization, candidate or political committee within the calendar year have an aggregate value or amount in excess of Two Hundred Dollars ($200.00) together with the date and amount of such expenditure.

(iii) The total amount of cash on hand of each reporting candidate and reporting

4

political committee;

MISS. CODE ANN. § 23-15-807(d). Failure to comply with these regulations can carry fines of up to $500. MISS. CODE ANN. § 23-15-813. Willful violations of these regulations are misdemeanors punishable by a fine of up to $3,000 and imprisonment of up to six months. MISS. CODE ANN. § 23-15-811(a).

B.  MISS. CODE ANN. §§ 23-17-47 *et seq*.

Section 23-17-47 defines a "political committee" as "any person, other than an individual, who receives contributions[2] or makes expenditures[3] for the purpose of influencing the passage or defeat of a measure on the ballot." MISS. CODE ANN. § 23-17-47. Each political committee must file with the Secretary of State a statement of organization no later than ten days after making expenditures in excess of $200 or receiving contributions in excess of $200. MISS. CODE ANN. § 23-17-49. The statement shall include: (1) the name and address of the committee and all officers; (2) a designation of a director of the committee and a custodian of books and accounts of the committee, who shall be designated treasurer, and (3) a brief statement identifying the measure that the committee seeks to pass or defeat. Id.

---

[2] "Contribution" is defined as "any gift, subscription, loan, advance, money or anything of value made by a person or political committee for the purpose of influencing the passage or defeat of a measure on the ballot, for the purpose of obtaining signatures for the proposed ballot measures and attempting to place the proposed measure on the ballot, and for the purpose of opposing efforts to place a proposed measure on the ballot; but does not include noncompensated, nonreimbursed volunteer personal services." MISS. CODE ANN. § 23-17-47(a).

[3] "Expenditure" is defined as "any purchase, payment, distribution, loan, advance, deposit, gift of money or anything of value, made by any person or political committee for the purpose of influencing any balloted measure, for the purpose of obtaining signatures for a proposed ballot measure and attempting to place the proposed measure on the ballot, and for the purpose of opposing efforts to place a proposed measure on the ballot." Miss. Code Ann. § 23-17-47(d).

5

Any political committee that either receives contributions in excess of $200 or makes expenditures in excess of $200 is additionally required to file monthly reports with the Secretary of State until all contributions and expenditures cease. MISS. CODE ANN. § 23-17-51. This monthly reporting requirement also applies to individuals who expend in excess of $200 for the purpose of influencing the passage or defeat of a ballot measure. Id. This reporting obligation continues until "all contributions and expenditures cease." Id. Additionally, "[i]n all cases a financial report shall be filed thirty (30) days following the election on a measure." Id. The financial reports must contain the following information:

(a) The name, address and telephone number of the committee or individual person filing the statement.

(b) For a political committee:

(i) The total amount of contributions received during the period covered by the financial report;

(ii) The total amount of expenditures made during the period covered by the financial report;

(iii) The cumulative amount of those totals for each measure;

(iv) The balance of cash and cash equivalents on hand at the beginning and the end of the period covered by the financial report;

(v) The total amount of contributions received during the period covered by the financial report from persons who contributed Two Hundred Dollars ($200.00) or less, and the cumulative amount of that total for each measure;

(vi) The total amount of contributions received during the period covered by the financial report from persons who contributed Two Hundred Dollars ($200.00) or more, and the cumulative amount of that total for each measure; and

(vii) The name and street address of each person from whom a contribution(s) exceeding Two Hundred Dollars ($200.00) was received during the period

6

covered by the financial report, together with the amount contributed, the date of receipt, and the cumulative amount contributed by that person for each measure.

(c) For an individual person:

(i) The total amount of expenditures made during the period covered by the financial report;

(ii) The cumulative amount of that total for each measure; and

(iii) The name and street address of each person to whom expenditures totaling Two Hundred Dollars ($200.00) or more were made, together with the amount of each separate expenditure to each person during the period covered by the financial report and the purpose of the expenditure.

(iv) The total amount of contributions received during the period covered by the financial report, the cumulative amount of that total for each measure, and the name and street address of each person who contributed more than Two Hundred Dollars ($200.00) and the amount contributed.

MISS. CODE ANN. § 23-17-53. Any person who violates this section is subject to fines as provided by § 23-15-813 (discussed above).

Unsurprisingly, the Plaintiffs characterize these requirements as "onerous," while the State describes them as "minimal." The State contends that each report required by the statute is actually a one page form supplied by the Secretary of State's office. The State points out that Mississippi's registration and disclosure thresholds are not particularly low compared to other states. See ProtectMarriage.com v. Bowen, 599 F. Supp. 2d 1197, 1221 n.10 (E.D. Cal. 2009) (listing contribution disclosure thresholds of all states, which range from "first dollar reporting" to $300). The State also argues that Mississippi's disclosure and registration forms are significantly less complex and require less disclosure than many of the campaign forms in other states.[4]

_____

[4]In its response, the State attached the registration and reporting forms for Oregon, Montana, Massachusetts, Ohio, North Dakota, and Washington.

## TRO/ PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is considered extraordinary relief, and a determination as to whether a set of circumstances warrant such relief rests in the discretion of the district court subject only to four preconditions enumerated by the Fifth Circuit. Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on a motion for preliminary injunction, a plaintiff must show (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve the public interest. Id. The party seeking such relief must prove each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. Miss. Power & Light Co. v. United Gas Pipeline, 760 F.2d 618, 621 (5th Cir. 1985).

## DISCUSSION

I.      Substantial Likelihood that the Plaintiffs will Prevail on the Merits

Plaintiffs must first demonstrate a substantial likelihood they will prevail on the merits.  In other words, Plaintiffs must demonstrate a substantial likelihood that Mississippi's disclosure laws are unconstitutional as applied to them.  However, "burdens at the preliminary injunction stage track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418, 126 S. Ct. 1211, 1219, 163 L. Ed. 2d 1017 (2006).  Therefore, as an initial matter, the Court must determine what level of scrutiny is applicable to the laws in question.

A.      Applicable Level of Scrutiny

Plaintiffs assert that strict scrutiny applies to Mississippi's campaign laws.  Generally,

"[l]aws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United v. Federal Election Comm'n, 558 U.S. ——, ——, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753 (2010) (internal quotation marks omitted).  Under strict scrutiny, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative. United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000); see also Sable Commc'n of Cal., Inc. v. FCC, 492 U.S. 115, 126, 109 S. Ct. 2829, 106 L. Ed. 2d 93 (1989) ("The Government may . . . regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest").

However, the Supreme Court has distinguished laws that "restrict the amount of money a person or group can spend on political communications" and laws that simply require disclosure of information by those engaging in political speech. Buckley v. Valeo, 424 U.S. 1, 19, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) (Buckley I).  "Disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign related activities and do not prevent anyone from speaking." Citizens United, 130 S. Ct. at 914 (citations and internal quotation marks omitted). For that reason, disclosure requirements have not been subjected to strict scrutiny, but rather to what the Court has termed  "exacting scrutiny." See id.  Exacting scrutiny, a less stringent standard than strict scrutiny, "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Id. (citing Buckley I, 424 U.S. at 64, 66, 96 S. Ct.

612).[5]  Similarly, in <u>Doe v. Reed</u>, 130 S. Ct. 2811, 2819, 177 L. Ed. 2d 493 (2010), the Supreme

Court stated:

> We have a series of precedents considering First Amendment challenges to disclosure
> requirements in the electoral context.  These precedents have reviewed such
> challenges under what has been termed "exacting scrutiny."  That standard requires
> a substantial relation between the disclosure requirement and a sufficiently important
> governmental interest.

Plaintiffs, however, contend that "strict scrutiny is required because the Supreme Court applied strict

scrutiny to PAC burdens in <u>Citizens United</u>."  However, this is a misreading of <u>Citizens United</u>.

   <u>Citizens United</u> addressed the Bi-Partisan Campaign Reform Act of 2002 ("BCRA"), which

prohibited corporations and unions from using general treasury funds to make expenditures for

"electioneering communication" or for speech expressly advocating the election or defeat of a

candidate.  <u>Citizens United</u>, 130 S. Ct. at 887.  However, corporations could, subject to federal

regulations, form and speak through Political Action Committees (PACs).  <u>Id.</u>  Applying strict

scrutiny, the Court held that the BCRA was an impermissible ban on independent expenditures by

corporations, regardless of the corporation's abilities to speak through PACs.  The Court explained:

> The law before us is an outright ban, backed by criminal sanctions. Section 441b
> makes it a felony for all corporations-including nonprofit advocacy
> corporations-either to expressly advocate the election or defeat of candidates or to
> broadcast electioneering communications within 30 days of a primary election and
> 60 days of a general election. Thus, the following acts would all be felonies under §
> 441b: The Sierra Club runs an ad, within the crucial phase of 60 days before the
> general election, that exhorts the public to disapprove of a Congressman who favors
> logging in national forests; the National Rifle Association publishes a book urging

---

[5]The question of whether the level of scrutiny applied to campaign finance disclosure
laws is "strict," or "exacting," or whether these are different standards has admittedly been
unclear until recently.  See <u>Human Life of Wash. Inc. v. Brumsickle</u>, 624 F.3d 990, 1003-05 (9th
Cir. 2010) (discussing the Supreme Court's arguably inconsistent precedents in this area).

the public to vote for the challenger because the incumbent U.S. Senator supports a handgun ban; and the American Civil Liberties Union creates a Web site telling the public to vote for a Presidential candidate in light of that candidate's defense of free speech. These prohibitions are classic examples of censorship.

Section 441b is a ban on corporate speech notwithstanding the fact that a PAC created by a corporation can still speak. A PAC is a separate association from the corporation. So the PAC exemption from § 441b's expenditure ban, § 441b(b)(2), does not allow corporations to speak. Even if a PAC could somehow allow a corporation to speak-and it does not-the option to form PACs does not alleviate the First Amendment problems with § 441b. PACs are burdensome alternatives; they are expensive to administer and subject to extensive regulations. For example, every PAC must appoint a treasurer, forward donations to the treasurer promptly, keep detailed records of the identities of the persons making donations, preserve receipts for three years, and file an organization statement and report changes to this information within 10 days.

Id. at 897 (citations omitted). Although the Court found PAC requirements to be "burdensome," the most salient feature of § 441(b) was that it amounted to an "outright ban," because it did not allow corporations to speak on their own behalf. Instead, they could only speak through a separate entity such as a PAC. The laws at issue here, although they share some similar features with the PAC requirements discussed in Citizen United, do not prevent groups or individuals from speaking on their own behalf—they merely require certain financial disclosures. Moreover, Citizens United upheld, applying exacting scrutiny, a separate law (2 U.S.C. § 434(f)) requiring, *inter alia*, that a person who spends more than $10,000 on electioneering communications in a calendar year must file a disclosure statement with the FEC identifying the person making the expenditure, the amount of the expenditure, the election to which the communication was directed, and the names of certain contributors. Id. at 913-14. Accordingly, the Court finds that exacting scrutiny is the appropriate standard to apply to Mississippi's disclosure laws. See id.; Reed, 130 S. Ct. at 2818; Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 55 (1st Cir. 2011) ("disclosure requirements have not been

subjected to strict scrutiny, but rather to 'exacting scrutiny.'" (citing <u>Citizens United</u>, 130 S. Ct. at

914; <u>Reed</u>, 130 S. Ct. at 2818)); <u>Brumsickle</u> 624 F.3d at 1024 ("As the latest in a trilogy of recent

Supreme Court cases, <u>Reed</u> confirmed that exacting scrutiny applies in the campaign finance

disclosure context"). Therefore, the Government must demonstrate a "substantial relation" between

the disclosure requirement and a "sufficiently important governmental interest." <u>Citizens United</u>,

130 S. Ct. at 914.

B.    Important Governmental Interest

       The State asserts that the most important interest served by Mississippi's disclosure laws is

the "informational interest."  In <u>Buckley I</u>, the Supreme Court found that disclosure laws may be

supported by an informational interest, stating:

> [D]isclosure provides the electorate with information as to where political
> campaign money comes from and how it is spent by the candidate in order to aid the
> voters in evaluating those who seek federal office. It allows voters to place each
> candidate in the political spectrum more precisely than is often possible solely on the
> basis of party labels and campaign speeches. The sources of a candidate's financial
> support also alert the voter to the interests to which a candidate is most likely to be
> responsive and thus facilitate predictions of future performance in office.

<u>Buckley I</u>, 424 U.S. at 66 (footnote omitted).

       Plaintiffs argue that this informational interest is limited to the context of candidates running

for office; they argue that it does not apply, or alternatively, applies with much less force in the

context of ballot initiatives.  Plaintiffs note that the while the Supreme Court has discussed the utility

of disclosure laws in the ballot issue context on three occasions, it has done so only in dicta.

       In <u>First National Bank of Boston v. Bellotti</u>, 435 U.S. 765, 98 S. Ct. 1407, 55 L. Ed. 2d 707

(1978), the Supreme Court invalidated a Massachusetts statute prohibiting corporate expenditures

in ballot-issue campaigns.  <u>Id.</u> at 767, 98 S. Ct. 1407.  However, the Court stated that people "may

12

consider, in making their judgment, the source and credibility of the advocate. . . . Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected." Id. at 791-92, 792 n.32, 98 S. Ct. 1407.

In Citizens Against Rent Control v. City of Berkely, 454 U.S. 290, 102 S. Ct. 434, 70 L. Ed. 2d 492 (1981), the Supreme Court invalidated a municipal ordinance setting a cap on contributions to committees supporting or opposing ballot measures. Id. at 291-94, 102 S. Ct. 434. The Court concluded that the cap was not necessary because another provision in the ordinance mandated disclosure, stating, "The integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions." Id. at 299-300, 102 S. Ct. 434.

Finally, in Buckley v. American Const. Law Found., Inc., 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999) (Buckley II), the Court invalidated a Colorado statute requiring the disclosure of the names of paid initiative circulators and the amount paid to each circulator. However, the Court, remarking on requirements that were not being challenged, stated:

> We explained in [Buckley I] that disclosure provides the electorate with information "as to where political campaign money comes from and how it is spent," thereby aiding electors in evaluating those who seek their vote. We further observed that disclosure requirements "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. . . . In this regard, the State and supporting amici stress the importance of disclosure as a control or check on domination of the initiative process by affluent special interest groups. . . . Disclosure of the names of initiative sponsors, and of the amounts they have spent gathering  support for their initiatives, responds to that substantial state interest. . . . Through the disclosure requirements that remain in place, voters are informed of the source and amount of money spent by proponents to get a measure on the ballot; in other words, voters will be told who has proposed a measure and who has provided funds for its circulation.

13

Id. at 525 U.S. at 202-03, 119 S. Ct. 636 (citations, brackets, and internal quotation marks omitted).

Plaintiffs further argue that the Supreme Court has "squarely rejected the application of the informational interest to ballot elections," relying on McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 348-49, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995). In McIntyre, the Plaintiff was fined for distributing anonymous leaflets in opposition to a referendum on a school tax levy, which violated an Ohio law prohibiting the distribution of unsigned leaflets. Id. at 337-38, 115 S. Ct. 1511. The Court stated, in response to the State's argument that it had a compelling interest in "providing the electorate with relevant information," that:

> The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit. Moreover, in the case of a handbill written by a private citizen who is not known to the recipient, the name and address of the author add little, if anything, to the reader's ability to evaluate the document's message. Thus, Ohio's informational interest is plainly insufficient to support the constitutionality of its disclosure requirement.

Id. at 348-49, 115 S. Ct. 1511. The Court finds, for substantially the reasons expressed by the court in Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1104 (9th Cir. 2003) (CPLC I), that McIntyre does not stand for the proposition the Plaintiffs assert. In CPLC I, the court stated:

> Like the Court in McIntyre, CPLC asks us to disregard California's informational interest in disclosure and hold that ballot-measure advocacy is absolutely protected speech. We think McIntyre is distinguishable from the case at bar, as the McIntyre Court itself observed. There the Court drew a distinction between prohibiting the distribution of anonymous literature and the mandatory disclosure of campaign-related expenditures and contributions. Id. at 353-55, 115 S. Ct. 1511 (distinguishing [Buckley I]). Though contributing and expending money is a form of speech, the Court explained that this type of speech is less worthy of protection than McIntyre's "personally crafted" leaflet:
>
>> A written election-related document-particularly a leaflet-is often a personally crafted statement of a political viewpoint. Mrs. McIntyre's handbills surely fit that description. As such, identification of the

14

> author against her will is particularly intrusive; it reveals unmistakably the content of her thoughts on a controversial issue. Disclosure of an expenditure and its use, without more, reveals far less information. It may be information that a person prefers to keep secret, and undoubtedly it often gives away something about the spender's political views. Nonetheless, even though money may "talk," its speech is less specific, less personal, and less provocative than a handbill-and as a result, when money supports an unpopular viewpoint it is less likely to precipitate retaliation.

CPLC I, 328 F.3d at 1104 (footnote omitted) (quoting McIntyre, 514 U.S. at 355, 115 S. Ct. 1511).

Additionally, the Court notes that the McIntyre applied strict scrutiny to the Ohio statute, McIntyre, 514 U.S. at 347-48, 115 S. Ct. 1511, rather than the exacting scrutiny standard enunciated in Citizens United and Reed.

The Tenth Circuit has taken a dim view of the informational interest in the context of ballot initiatives. In Sampson v. Buescher, a case heavily relied on by the Plaintiffs, the court opined:

> Thus, the reporting and disclosure requirements for Colorado issue committees (at least those committees addressing ballot issues) must be justified on the third ground-the informational interest. We must therefore analyze the public interest in knowing who is spending and receiving money to support or oppose a ballot issue. It is not obvious that there is such a public interest. Candidate elections are, by definition, ad hominem affairs. The voter must evaluate a human being, deciding what the candidate's personal beliefs are and what influences are likely to be brought to bear when he or she must decide on the advisability of future governmental action. The identities of those with strong financial ties to the candidate are important data in that evaluation. In contrast, when a ballot issue is before the voter, the choice is whether to approve or disapprove of discrete governmental action, such as annexing territory, floating a bond, or amending a statute. No human being is being evaluated. When many complain about the deterioration of public discourse-in particular, the inability or unwillingness of citizens to listen to proposals made by particular people or by members of particular groups-one could wonder about the utility of ad hominem arguments in evaluating ballot issues. Nondisclosure could require the debate to actually be about the merits of the proposition on the ballot. Indeed, the Supreme Court has recognized that "[a]nonymity . . . provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message simply because they do not like its proponent." McIntyre, 514 U.S. at 342, 115 S.Ct. 1511.

15

625 F.3d 1247, 1256-57 (10th Cir. 2010). The court concluded, "assuming that there is a legitimate public interest in financial disclosure from campaign organizations, we also recognize that this interest is significantly attenuated when the organization is concerned with only a single ballot issue and when the contributions and expenditures are slight." Id. at 1259.

The Ninth Circuit, by contrast, has held that the informational interest applies even more strongly in the context of ballot initiatives. For example, in CPLC I, the court stated:

> Though the [Buckley I] Court discussed the value of disclosure for candidate elections, *the same considerations apply just as forcefully, if not more so, for voter-decided ballot measures.* Even more than candidate elections, initiative campaigns have become a money game, where average citizens are subjected to advertising blitzes of distortion and half-truths and are left to figure out for themselves which interest groups pose the greatest threats to their self-interest. Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown. At least by knowing who backs or opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the legislation.
>
> Voters act as legislators in the ballot-measure context, and interest groups and individuals advocating a measure's defeat or passage act as lobbyists; both groups aim at pressuring the public to pass or defeat legislation. We think Californians, as lawmakers, have an interest in knowing who is lobbying for their vote, just as members of Congress may require lobbyists to disclose who is paying for the lobbyists' services and how much.

328 F.3d at 1105-06 (internal quotations, citations, and footnote omitted) (emphasis added); see also Brumsickle, 624 F.3d at 1007 ("Access to reliable information becomes even more important as more speakers, more speech-and thus more spending-enter the marketplace, which is precisely what has occurred in recent years. Like campaigns for elected office, ballot initiatives are the subject of intense debate and, accordingly, greater expenditures to ensure that messages reach voters."); Canyon Ferry Road Baptist Church v. Unsworth, 556 F.3d 1021, 1032 (9th Cir. 2009) (stating "as a general

matter, mandating disclosure of the financiers of a ballot initiative may prevent the wolf from masquerading in sheep's clothing" and finding "we have little trouble concluding that Montana's informational interest is generally 'important' in the context of Montana's statewide ballot issues.").

After careful consideration of the above precedent, this Court is of the opinion that the Ninth Circuit's view of the State's informational interest in the context of ballot initiatives is more persuasive. Accordingly, the Court finds that Mississippi informational interest in this context is "important," satisfying the first prong of exacting scrutiny. Because the Court finds that the State's informational interest is a sufficiently important interest to survive exacting scrutiny, the Court need not decide at this point whether the State's interest in detecting violations of its campaign finance laws in the context of ballot initiative spending is sufficiently important to survive exacting scrutiny.

C.      Substantial Relation

The Court must next assess the "fit" between Mississippi's disclosure requirements and the State's informational interest. See Canyon Ferry, 556 F.3d at 1034. The inquiry is "one of degree, not kind, for it is well established that, in the ordinary case, a state informational interest is sufficient to justify the mandatory reporting of expenditures and contributions in the context of ballot initiatives." Id. (citing Alaska Right to Life Comm. v. Miles, 441 F.3d 773, 789-92 (9th Cir. 2006); Cal. Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1189 (9th Cir. 2007) (CPLC II). The Plaintiffs argue that "no informational interest can exist at the point that Mississippi imposes those burdens [registration, reporting, or disclosure provisions of Mississippi's campaign finance laws]." In other words, Plaintiffs argue that the statutes' threshold amount for registration and disclosure is too low relative to the burdens it imposes.

In Buckley I, the Supreme Court considered whether a $10 record keeping threshold and a

17

$100 disclosure threshold passed constitutional review. <u>Buckley I</u>, 424 U.S. at 82-83, 96 S. Ct. 612.

The Court stated:

> The $10 and $100 thresholds are indeed low. Contributors of relatively small amounts are likely to be especially sensitive to recording or disclosure of their political preferences. These strict requirements may well discourage participation by some citizens in the political process, a result that Congress hardly could have intended. Indeed, there is little in the legislative history to indicate that Congress focused carefully on the appropriate level at which to require recording and disclosure. Rather, it seems merely to have adopted the thresholds existing in similar disclosure laws since. But we cannot require Congress to establish that it has chosen the highest reasonable threshold. The line is necessarily a judgmental decision, best left in the context of this complex legislation to congressional discretion. *We cannot say, on this bare record, that the limits designated are wholly without rationality.*

<u>Id.</u> at 83, S. Ct. 612 (emphasis added). <u>Buckley I</u>'s deference to the legislature in setting disclsoure thresholds unless they are "wholly without rationality" has continued to be followed in recent cases. <u>See</u>, <u>e.g.</u>, <u>Nat'l Org. for Marriage v. McKee</u>, 649 F.3d 34, 60 (1st Cir. 2011) ("Following [<u>Buckley I</u>], we have granted judicial deference to plausible legislative judgments as to the appropriate location of a reporting threshold, and have upheld such legislative determinations unless they are wholly without rationality.") (citations and internal quotes omitted); <u>Nat'l Org. for Marriage v. Daluz</u>, 654 F.3d 115, 119 (1st Cir. 2011); <u>Canyon Ferry</u>, 624 F.3d at 1033; <u>ProtectMarriage.com v. Bowen</u>, 599 F. Supp. 2d 1197, 1220-21 (E.D. Cal. 2009); <u>Jackson v. Leake</u>, 476 F. Supp. 2d 515, 526 (E.D.N.C. 2006).

Plaintiffs argued at the hearing that <u>Randall v. Sorrell</u> disavowed this deference in favor of the "exercise of independent judicial judgment." 548 U.S. 230, 249, 126 S. Ct. 2479, 165 L. Ed. 2d 482 (2006). However, of particular import, <u>Sorrell</u> addressed a law imposing a substantive cap on campaign contributions as opposed to a disclosure law. As the First Circuit recognized in <u>McKee</u> while addressing a similar argument, "[t]he limits at issue in <u>Sorrell</u>, however, were substantive

contribution limits, the setting of which presents different considerations than the determination of

the threshold for a reporting requirement, and which is subject to different standards of review."

McKee, 649 F.3d at 61.   As the Court held in Citizens United, "[d]isclaimer and disclosure

requirements may burden the ability to speak, but they impose no ceiling on campaign related

activities and do not prevent anyone from speaking."  Citizens United, 130 S. Ct. at 914 (citations

and internal quotation marks omitted).  Therefore, this Court does not read Sorrell as changing the

degree of deference the Court affords the legislature in setting disclosure thresholds.

Plaintiffs cite three cases in which reporting requirements for ballot initiative related

spending were found to be unconstitutional as applied: Sampson v. Buescher, 625 F.3d 1247 (10th

Cir. 2010); Hatchett v. Barland, — F. Supp. 2d —, 2011 WL 4336740 (E.D. Wis. Sept. 4, 2011);

and Swaffer v. Cane, 610 F. Supp. 2d 962 (E.D. Wis. 2009).  This Court finds significant, however,

that none of these three cases discuss Buckley I's "wholly without rationality" test, among other

distinctions discussed below.

In Sampson, the Tenth Circuit held that Colorado's campaign reporting and disclosure

requirements were unconstitutional as applied to a committee that had raised less than $1,000 in

opposition to a ballot proposal to annex their neighborhood into a nearby town.  Sampson, 625 F.3d

at 1261.  As stated above, the Tenth Circuit first determined that the State's interest in disclosure

"appl[ies] only partially (or perhaps not all) to ballot-issue campaigns."  Id. at 1255. The court also

noted that, "[t]he case before us is quite unlike ones involving the expenditure of tens of millions

of dollars on ballot issues presenting 'complex policy proposals.'"  Id. at 1261.

The court then determined that "The average citizen cannot be expected to master on his or

her own the many campaign financial-disclosure requirements set forth in Colorado's constitution,

the Campaign Act, and the Secretary of State's Rules Concerning Campaign and Political Finance." Id. at 1259. Here, the State argues that Mississippi's four forms (each of which are one page long) "could not be argued to be beyond the understanding of the 'average citizen' as they are less complex than many of the forms completed by average citizens on a routine basis."[6] Additionally, as the State points out, the Colorado statute at issue went beyond Mississippi's disclosure requirements, in that: (1) a $20, as opposed to $200, donor reporting threshold applied; (2) all monetary contributions received must be deposited in a separate account in the committee's name; (3) no contribution or expenditure exceeding $100 could be in cash; (4) the group must have a registered agent; (5) the group must register before accepting any contributions; and (6) the group must disclose the names and address of the financial institution used. See id. at 1249-51. For these reasons, the Court finds Sampson distinguishable.

In Swaffer and Hatchett, the Eastern District of Wisconsin addressed two different versions of a Wisconsin statute. In Swaffer, the law required registration and disclosures by any individual or group who spent in excess of $25 in a calendar year promoting or opposing a vote on a referendum. Swaffer, 610 F. Supp. 2d at 966. In Hatchett, the court addressed an amended version of the law which raised the threshold to $750 per calendar year. Hatchett, 2011 WL 4336740 at *4. As the State again points out, the Wisconsin statutes at issue is more onerous than its Mississippi counterpart in that they: (1) prohibited groups or individuals from using anonymous contributions in excess of $10, and instead required them to donate such contributions to charity; (2) prohibited the receipt of any contribution or the expenditure of any funds at a time where is a vacancy of the

---

[6]To illustrate its point, the State has supplemented the record with sundry forms such as, *inter alia*, a Mississippi driver's license application, hunting license application, or gym membership application.

office of treasurer of a group; (3) required a dedicated bank account; (4) required all contributions, disbursements and obligations exceeding $10 to be recorded by the group treasurer or the individual; and (5) required an itemized disclosure giving the name and address of any contributor giving more than $20 in a calendar year.  Id. at *16.

The State cites the cases of Human Life of Washington v. Brumsickle, 624 F.3d 990 (9th Cir. 2010), Alaska Right to Life Committee v. Miles, 441 F.3d 773 (9th Cir. 2006), ProtectMarriage.com v. Bowen, 599 F. Supp. 2d 1197 (E.D. Cal. 2009), and Olson v. City of Golden, — F. Supp. 2d —, 2011 WL 3861433 (D. Colo. 2011),  in support of upholding Mississippi's disclosure laws.  In Brumsickle, the Ninth Circuit upheld Washington's disclosure law, which was triggered on the mere "expectation" of a group receiving *any* contributions or making any expenditures.  Brumsickle,  624 F.3d at 997.  Any such group was designated as a "political committee," and required to (1) appoint a treasurer; (2) open a bank account in the state of Washington; and (3) file a two page registration form.  Id.[7]  The court concluded that "because the Disclosure Law's somewhat modest political committee disclosure requirements are substantially related to the government's interest in informing the electorate, they survive exacting scrutiny."  Id. at 1014.

Similarly, in Miles, the Ninth Circuit upheld Alaska's campaign disclosure laws even applying (in accordance with Ninth Circuit precedent at the time) strict scrutiny.  Miles, 441 F.3d at 789. The Alaska law required an entity making campaign related independent expenditures to file disclosure reports if its annual operating budget exceeded $150.  The court found these burdens were "not particularly onerous."  Id. at 791.

_____

[7]The law imposed additional reporting requirements on groups that raise or spend more than $5,000 in a year or receive more than $500 from any single donor.  Id. at 998.

In <u>Bowen</u>, the Eastern District of California upheld a California disclosure statute that required disclosure of any contributor donating more than $100. <u>Bowen</u>, 599 F. Supp. 2d at 1220-21. The court, again applying strict scrutiny, found "the legislative line drawn is narrowly tailored to the State's compelling information interest, that the threshold need not be indexed for inflation, and that a contrary holding would call into question scores of statutes in which the legislature or the people have sought to draw similar lines." <u>Id.</u> at 1220.

Finally, in <u>Olson</u>, the court rejected a first amendment challenge to a reporting requirement for any expenditure of $50 or more "by any person or organization for the purpose of expressly advocating the election or defeat of any candidate, ballot issue, ballot question or issue." <u>Olson</u>, 2011 WL 3861433, at *1. The Court concluded:

> Golden has carried its burden in showing that the disclosure requirements of the 2005 Ordinance served a compelling purpose in providing information to the public about the source of non-campaign funds expended on behalf of a candidate or issue and deterring corruption or the appearance of corruption. In addition, Golden has shown that the 2005 Ordinance was narrowly tailored to that purpose. The disclosure requirements were not onerous, involving only the reporting of expenditures over $50. The report required identifying and contact information about the person making such expenditure, the candidate or issue that the expenditures were intended to support or oppose, information about the vendors and a description of the expenditure, and the date and amount of the expenditure. This provided the information the public would need to understand who spent money on behalf of a candidate or issue, how much, how, and what the effect of that expenditure might be.

<u>Id.</u> at *9.

In light of the foregoing authority, the Court finds that the Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits. The State has demonstrated an informational interest that is at least "important," if not compelling, and the disclosure laws here are substantially related to the interest. The requirements here do not limit the amount of money that

22

may be raised or expended by the Plaintiffs. They do not unduly inhibit the ability of the Plaintiffs to raise money, nor do they impose overly burdensome structural requirements on the Plaintiffs. The information required by Mississippi's registration and disclosure forms is not overly intrusive nor do the forms seem particularly complex. Additionally, the Court finds it significant that Mississippi's registration and disclosure thresholds fall "well within spectrum of those mandated by its sister states." Bowen, 599 F. Supp. 2d at 1221. The Court cannot say that the $200 threshold set by the legislature for registration and disclosure is "wholly without rationality." In sum, the Court finds the State has carried its burden of showing that the disclosure laws at issue are substantially related to its important informational interest. Therefore, the Court finds that the Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits.

II.     Substantial Threat of Irreparable Injury to the Plaintiff

The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976). However, because the Court has found that the Plaintiff's are unlikely to succeed on the merits of their claim, and additionally finds below that the third and fourth Canal Authority factors are not met, the Court need not determine whether Plaintiffs' assertion that their ballot initiative related speech will be chilled if they are forced to comply with Mississippi's disclosure laws constitutes an irreparable injury.

III.     Harm to the Plaintiff Versus Harm to the Defendant & Public Interest

The Court finds that the harm to the Defendant is outweighed by any harm to the Plaintiff if the Court fails to grant a preliminary injunction. The Court additionally finds that granting a preliminary injunction would not serve the public interest. As the court stated in Bowen, "if

23

disclosure is prevented, the people of California will be denied the ability to fully inform themselves of the circumstances surrounding the passage of Proposition 8. For the reasons already articulated, the balance of hardships favors the Plaintiffs and consideration of the public interest weighs against injunctive relief." 599 F. Supp. 2d at 1226; see also Worley v. Roberts, 749 F. Supp. 2d 1321, 1325 (N.D. Fla. 2010) (holding "the disruption that would be caused by the invalidation of this disclosure requirement, on the eve of the election, would be substantial").

Furthermore, as the State argues, Plaintiffs have waited until the eleventh hour to file this lawsuit and have not demonstrated any emergency basis for the entry of a temporary restraining order or preliminary injunction. In Respect Maine Pac v. McKee, the First Circuit denied granting the Plaintiffs an emergency injunction enjoining Maine's election laws in part because of the untimeliness of the suit, stating:

> In determining the weight to be accorded to the appellants' claims, we also note that this "emergency" is largely one of their own making. The appellants, well aware of the requirements of the election laws, chose not to bring this suit until August 5, 2010, shortly before the November 2 elections. . . . Further, the case law on which they rely is not new. They rely primarily on Davis v. Fed. Election Comm'n, 554 U.S. 724, 128 S. Ct. 2759, 171 L. Ed.2d 737 (2008), which was decided on June 26, 2008. Citizens United v. Fed. Election Comm'n, --- U.S. ----, 130 S.Ct. 876, --- L.Ed.2d ---- (2010), was decided in January 2010.

622 F.3d 13, 16 (1st Cir. 2010); see also Garrard v. City of Grenada, 2005 WL 2175729 (N.D. Miss. Sept. 8, 2005) (noting that temporary restraining order requested prior to mayoral and city council elections was denied because of its "eleventh hour filing"). Similarly, in Worley, the court denied the Plaintiffs' request for a preliminary injunction of Florida's disclosure laws, stating:

> There have been no changes in the relevant facts or law that explain the last-minute filing of the lawsuit. This is, instead, an emergency entirely of the plaintiffs' own making. And the disruption that would be caused by the invalidation of this disclosure requirement, on the eve of the election, would be substantial. If the

> plaintiffs were likely to prevail on the merits, the late filing of the claim would perhaps not be fatal. But when a claim seeks to depart from long-established precedent, and does so too late to allow meaningful appellate review, the balance of equities and public interest at least suggest caution. Enforcement of the disclosure requirement will not be preliminarily enjoined.

Worley, 749 F. Supp. 2d at 1324.

Here, the lateness of the Plaintiffs' motion, filed nineteen days before the election, weighs against granting the extraordinary remedy of injunctive relief. "It is well established that in election-related matters, extreme diligence and promptness are required." McClafferty v. Portage County Bd. of Elections, 661 F. Supp. 2d 826, 839 (N.D. Ohio 2009); Cf. Reynolds v. Sims, 377 U.S. 533, 585, 84 S. Ct. 1362, 12 L. Ed. 2d 506 ("under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case").

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.

SO ORDERED on this, the 3rd day of November, 2011.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**