**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**Oxford Division**

GORDON VANCE JUSTICE, JR.; SHARON BYNUM; MATTHEW JOHNSON; ALISON KINAMAN AND STANLEY O'DELL;

Plaintiffs,

v.

Civil Action No. 3:11-CV-138-SA-SAA

DELBERT HOSEMANN, in his official capacity as Mississippi Secretary of State; JIM HOOD, in his official capacity as Attorney General of the State of Mississippi,

Defendants.

---

**REBUTTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Although there remains some confusion in the law governing Plaintiff's claims here, *see* Mem. Op., DOC 18 at 8-17, the weight of the case law and the facts adduced in discovery, demonstrate that Plaintiffs are entitled to summary judgment over the State's objections.

## I. Strict Scrutiny vs. Exacting Scrutiny vs. Wholly Without Rationality

Plaintiffs have challenged laws that burden speech and association rights "at the core of our electoral process and of the First Amendment freedoms." *Buckley v. Valeo*, 424 U.S. 1, 39 (1976) (internal quotation omitted); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("[t]he principles enunciated in *Buckley* extend equally to issue-based elections"). Laws that burden political speech are subject to strict scrutiny. *See FEC v. Wisc. Right to Life, Inc.*,

551 U.S. 449, 464 (2007) (collecting cases). Plaintiffs' claims should be subjected to strict scrutiny as well. *See* DOC 56 at 9-10; DOC 43 at 15 n.5.

Although they are entitled to the protection afforded by strict scrutiny, Plaintiffs have argued that even under exacting scrutiny, they prevail. *See* DOC 43 at 15 & n.5.[1] The State is, apparently, of two minds about the level of scrutiny to apply here. First, it has asserted that exacting scrutiny is the proper standard. DOC 52 at 1. But it applies that level of scrutiny only to Plaintiffs' facial claims. *See id.* at 2-3. When it comes to Plaintiffs' as-applied claims, the State shifts to applying "wholly without rationality." *See id.* at 3-5. To date the State has not attempted to explain how its interest in information about Plaintiffs—a small ad hoc group of friends and neighbors spending relatively little money—is "important" enough to justify the burdens the State's scheme puts on Plaintiffs. *Cf. Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 482 (7th Cir. 2012) (noting that in cases involving small groups and individuals "the state's interest in disseminating such information to voters is at a low ebb"); *Family PAC v. McKenna*, 685 F.3d 800, 809-10 & nn.8 & 10 (9th Cir. 2012) (noting low informational interest in small ad hoc groups and collecting cases). The State has only, wrongly, insisted that its decision to regulate Plaintiffs demands the "deference" afforded by the "wholly without rationality" standard.

Plaintiffs have explained in depth why "wholly without rationality" is not the proper standard to apply to their as-applied challenge. DOC 56 at 22-27; *see also* DOC 43 at 24-25. Briefly summarized, applying "wholly without rationality" to Plaintiffs' claims here (1) ignores every recent case that has applied at least exacting scrutiny to challenges to "disclosure" laws—

[1] The State asserts that Plaintiffs have "effectively conceded" that exacting scrutiny applies. DOC 52 at 1. Plaintiffs have done no such thing. *See* DOC 43 at 15 n.5. They have merely argued that they should prevail even under a lower level of scrutiny. If this Court wishes to take up again the issue of applying strict scrutiny to Plaintiffs' claims, Plaintiffs welcome the opportunity to reargue it.

including as-applied claims; (2) conflates facial overbreadth case law with case law governing as-applied challenges to registration, reporting, and disclosure laws; (3) precludes as-applied challenges to registration, reporting, and mandatory disclosure schemes by small groups and individuals; and (4) results in turning Plaintiffs' challenge to laws that chill core political speech and association into a mere rational basis case. Accordingly, this Court should not apply "wholly without rationality" review to Plaintiffs' as-applied challenge.

## II. Evidence of the Burdens

The State fundamentally misrepresents Plaintiffs' arguments about the burdens of Mississippi's scheme. Plaintiffs have not argued that "any burden is unconstitutional [or] that any form is too complex." *Cf.* DOC 52 at 8. Rather, Plaintiffs have argued that Mississippi's scheme is burdensome—it mandates numerous registration, organization, record keeping, reporting, and disclosure requirements through unclear laws backed by serious penalties—and that a speaker must understand its complex laws in order to successfully compete its mandatory forms. *See* DOC 43 at 17-22. Because the State has a very low informational interest in ballot measure elections, especially in the context of small, ad hoc groups, *see Sampson v. Buescher*, 625 F.3d 1247, 1256-59 (10th Cir. 2010) (discussing the low informational interest), the burdens that Mississippi imposes on ballot measure speech and association, especially on small, ad hoc groups, *see, e.g.*, *Mass. Citizens for Life v. FEC*, 479 U.S. 238, 254-55 (1986) (plurality opinion) (political committee requirements fall heaviest on small groups), cannot be constitutionally justified, *Doe v. Reed*, 130 S. Ct. 2811, 2818–19 (2010) (Exacting scrutiny requires the government to prove "a substantial relation between the . . . requirement[s] and a sufficiently important governmental interest. To withstand this scrutiny, the strength of the governmental

interest must reflect the seriousness of the actual burden on First Amendment rights.") (internal citations and quotation marks omitted).

*Citizens United v. FEC* established that political committee requirements like Mississippi's are burdensome as a matter of law. 130 S. Ct. 876, 897–98 (2010). Moreover, the burdens imposed by Mississippi's scheme are "evident and inherent" on the face of the statutes. *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2823 (2011) ("AFEC"). The plain language of both Chapter 15 and Chapter 17 establishes numerous registration, organization, record keeping, and reporting burdens that can only be characterized as "substantial." *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 871 (8th Cir. 2012) (en banc).

Further, Plaintiffs have demonstrated that the chilling effects of Mississippi's registration, reporting, and disclosure mandates are real; they are more than just a "theoretical concern." *Id.* at 874. The State waves away these chilling effects as affecting "only 'five, maybe six' persons." DOC 52 at 20. But the State's admission that the laws chill political involvement, including that of the Plaintiffs, means that Plaintiffs are entitled to judgment as a matter of law. The Supreme Court has noted that "it is never easy to prove a negative," i.e. that individuals and groups "did not speak or limited their speech because of the" challenged laws. *AFEC*, 131 S. Ct. at 2823 (internal quotation marks omitted). Nevertheless, Plaintiffs have proffered evidence, *see* DOC 43 at 2-3, 10-13, 17-22, that proves exactly that Mississippians did not speak or limited their speech because of Mississippi's laws, *AFEC*, 131 S. Ct. at 2823 (noting that the record included examples of specific people curtailing their speech in reaction to the challenged scheme). It is therefore incumbent on the State to show that this chill is justified by a strong interest. This it does not and cannot do.

## III. The State Ignores The Evidence That Its Scheme is Ambiguous

The State continues to misunderstand Plaintiffs' point about the overlap between the two different sets of campaign finance laws in Mississippi—Chapters 15 and 17. Plaintiffs have argued that, based on their plain language, both Chapters apply. *See* DOC 43 at 4-5. That both Chapters do or may apply increases the confusion—and therefore, the burdens—for speakers. *See Swanson*, 692 F.3d at 873-74 ("just the daunting task of deciphering what is required under the law" is a burden that can chill small groups and individuals); *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 296 (4th Cir. 2008) (speakers are forced "to navigate a maze of rules, sub-rules, and cross-references in order to do nothing more than project a basic political message").

It is not a "manufactured" claim that speakers would be confused and therefore chilled by this scheme. The State's own Constitutional Initiative Guide—which the State embraces, *see* DOC 52 at 15—tells speakers to do exactly what the State now insists they should not, *see id.*—turn to Chapter 15 and the Campaign Finance Guide for guidance:

> Initiative sponsors and persons making expenditures *for* or *against* initiatives must file monthly campaign finance reports with the Secretary of State's Office. A booklet outlining Mississippi's campaign finance laws is available from the Secretary of State's Office. No attempt to include all campaign finance disclosure requirements is made in this publication. Refer to the law in Miss. Code Ann. §§23-17-47 through 23-17-53 (1972) and Miss. Code Ann. §§23-15-801 through 23-15-815.

DOC 42-6 at 10. If the State is confused by its own laws, it only stands to reason that speakers are as well.

Moreover, the State tries to escape the plain language of its scheme by reverting to a canon of construction. *See* Dep. of Kimberly P. Turner, DOC 42-11 at 18:23-19:2, 20:23-21:1 ("the specific section takes precedent over a more general section"). But canons of construction only come into play if the plain language of a statute is ambiguous. *Swearingen v. Owens-Corning Fiberglas Corp.*, 968 F.2d 559, 562 (5th Cir. 1992); *Oktibbeha County Hosp. v. Miss.*

*State Dep't of Health*, 956 So. 2d 207, 209 (Miss. 2007).[2] That the statutes require lawyerly parsing also effects an unconstitutional chilling of speech. *Citizens United*, 130 S. Ct. at 889. ("The First Amendment does not permit laws that force speakers to retain a campaign finance attorney . . . or seek declaratory rulings before discussing the most salient political issues of our day.").

Finally, everything Plaintiffs say about the Initiative Monthly Report form, DOC 42-2, is correct: It does not comport with the statutory requirements. *See* DOC 43 at 9-10. Plaintiffs did not "purposefully refer[]" to the wrong form in their motion for summary judgment. DOC 52 at 16. Plaintiffs erroneously identified the Initiative Monthly Report form—which they accurately labeled and described—as their Exhibit 3 rather than as their Exhibit 2. Although the State baldly insists the Monthly Report form is "geared towards compliance with" Chapter 17, *id*., the State offers no substantive response to Plaintiffs' observations about that document, DOC 43 at 9-10.

## IV. The State Conflates Voluntary Disclosure with Mandatory Disclosure

The State argues that its registration, reporting, and disclosure requirements actually benefit rather than burden speakers by pointing to Atlee Breeland's and Parents Against Personhood's desire to disclaim affiliation with Planned Parenthood during the last election. DOC 52 at 19-20. But the choice to associate—or not—and to tell others about their associations—or lack thereof—is a choice that the First Amendment leaves to speakers, not to the government. *See McIntyre*, 514 U.S. at 341-42 (the choice to speak anonymously or not—

[2] Moreover, the statutory language here is not ambiguous: A Chapter 15 political committee is, *inter alia*, any group of persons that receives contributions or makes expenditures in excess of $200 in a calendar year "for the purpose of influencing or attempting to influence the action of voters for or against . . . balloted measures." Miss. Code Ann. § 23-15-801(c). Nowhere is the term "balloted measures" defined or limited in the manner that the State claims it is.

"[w]hatever the motivation"—is a choice left to a speaker and "is an aspect of the freedom of speech protected by the First Amendment").

Instead, Ms. Breeland's testimony supports the central observation of Plaintiffs' expert Dr. Primo: Speakers voluntarily provide numerous "cues" to voters. Ms. Breeland "wanted the voters to know that Parents Against [Personhood] was completely independent from Planned Parenthood." DOC 52 at 19 (paraphrasing Ms. Breeland's testimony). Accordingly, she would have taken steps to tell voters that. She did not need the State to tell her to do it and the voters would have had that same informational "cue" about Ms. Breeland's group even in the absence of the State's campaign finance scheme. This simply illustrates the fact that Mississippi's scheme "provides virtually no marginal informational benefits for Mississippi voters." Primo Report, DOC 42-14 at 13.

## V. The Implications of The State's "No Enforcement" Defense

The State seemingly takes pride in the fact that it accepts incomplete, late, and flawed reporting forms. DOC 52 at 23. The State claims this "evidences the Secretary of State's reasonable and appropriate efforts to facilitate disclosure in the least burdensome manner possible." *Id.* But the point remains: If, as the State contends, campaign finance requirements are not complex, why are there so many incomplete, late, and flawed reporting forms? More to the point, these errors are still statutorily subject to enforcement and fines. Miss. Code Ann. § 23-15-813. And "[w]e do not expect potentially regulated associations to rely on [Mississippi's] informal assurance that it would not enforce the plain meaning of the statute[s]. Unguided regulatory discretion and the potential for regulatory abuse are the very burdens to which political speech must never be subject." *Swanson*, 692 F.3d at 873 n.8 (internal quotation marks omitted).

Beyond the effects on political committees that cannot know whether and to what extent they face regulation different than that provided by statute, the State's assertion undermines its argument that it has a strong informational interest in the regulatory scheme. By the State's own admission, the "informational interest" demands that information is presented to the voting public to provide cues. *See* DOC 45 at 13-17. Therefore the informational interest—to the extent it exists in the first place—is only as powerful as the information it is providing to voters. If the State is not ensuring that complete, accurate, and timely information is passed to voters, then the informational interest cannot be that strong.

## CONCLUSION

Plaintiffs' claims are subject to strict scrutiny. Moreover, the "informational interest" does not apply to speech about ballot measures. For these two reasons alone, Plaintiffs are entitled to summary judgment. But even if this Court finds otherwise, Plaintiffs are still entitled to summary judgment. Plaintiffs' claims are still subject to exacting scrutiny, not "wholly without rationality" review. The State's informational interest in Plaintiffs is at a low ebb. The burdens imposed by the State's scheme are substantial based on the plain language of the State's statutes and as corroborated by the evidence. Accordingly, the strength of the State's interest does not justify the burdens on First Amendment rights and Plaintiffs are entitled to summary judgment.

Dated: December 17, 2012

Respectfully Submitted on Behalf of Plaintiffs

**WELLS MARBLE & HURST, PLLC**
/s/ Russell Latino III
Russell Latino III
(MS Bar No. 102281)
P. O. Box 131
Jackson, MS 39205-0131

**INSTITUTE FOR JUSTICE**
/s/ Paul V. Avelar
Paul V. Avelar
398 South Mill Avenue, Suite 301
Tempe, AZ 85281
Telephone: 480.557.8300

Telephone: 601.605.6900
Facsimile: 601.605.6901
Email: rlatino@wellsmar.com
ljennings@wellsmarble.com

Facsimile: 480.557.8305
Email: pavelar@ij.org
*Pro Hac Vice*

Steven M. Simpson
901 North Glebe Road, Suite 900
Arlington, VA 22203
Telephone: 703.682.9320
Facsimile: 703.682.9321
Email: ssimpson@ij.org
*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Rebuttal Memorandum in Support of Plaintiffs' Motion for Summary Judgment has been filed electronically with the Clerk of Court using the Court's ECF system and thereby served on the following persons:

Harold E. Pizzetta, III
Assistant Attorney General
Office of the Attorney General
Post Office Box 220
Jackson, MS 39205-0220
hpizz@ago.state.ms.us

THIS the 17th day of December, 2012.

/s/ Paul Avelar
Paul V. Avelar