## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

GORDON VANCE JUSTICE, JR., ET AL.                    PLAINTIFFS

v.                                      CIVIL CASE NO. 3:11CV138-A-A

DELBERT HOSEMANN, ET AL.                              DEFENDANTS

### The State Defendants Rebuttal Memorandum
### in Support of Their Motion for Summary Judgment

Most of the arguments raised in Plaintiffs' opposition to the State Defendants' motion summary judgment were either anticipated in the State Defendants' principal brief or have been addressed in the State Defendants' memorandum in opposition to Plaintiffs' motion for summary judgment. This rebuttal is limited to those few arguments that merit additional refutation.

**I.    Plaintiffs' contention that voters have "enough" information is unpersuasive.**

Plaintiffs' contention that voters realize no benefit from financial disclosures is directly contrary to the numerous courts who have found states to have an important governmental interest in informing voters through disclosure requirements. *See, e.g.*, *Citizens United*, 130 S.Ct. at 914. ("In *Buckley*, the Court explained that disclosure could be justified based on a governmental interest in 'provid[ing] the electorate with information' about the sources of election-related spending."); *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1006 (9th Cir. 2010) ("by revealing information about the contributors to and participants in public discourse and debate, disclosure laws help ensure that voters have the facts they need to evaluate the various messages"). This Court's conclusion that the State has an important informational interest in the context of ballot initiatives remains a correct conclusion. *Justice v. Hosemann*, 829 F.Supp.2d 504, 516 (N.D.Miss. 2011).

Despite the clear case law to the contrary, Plaintiffs' contend that disclosure requirements do not serve an important state interest because voters already have sufficient information pertaining to initiatives and those groups supporting initiatives. Pls. Br. at 20-21. To Plaintiffs: information is information. Plaintiffs ignore that without mandatory financial reporting, the voters will lose a key category of information: identification of who is attempting to influence their votes. The Supreme Court has found that without mandatory disclosures "independent groups were running election-related advertisements while hiding behind dubious and misleading names." *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 914 (2010) (internal quotation omitted). Indeed, we know that groups will not voluntarily disclosure their financial backers in the absence of a statutory requirement by Plaintiffs' own desire to litigate rather than voluntarily disclose such information.

Further, knowing who is paying for the speech is exceptionally important for voters considering how much weight to give that speech. *See Brumsickle*, 624 F.3d at 1008 ("An appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another. The increased 'transparency' engendered by disclosure laws 'enables the electorate to make informed decisions and give proper weight to different speakers and messages.' *Citizens United*, 130 S.Ct. at 916"); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105 (9th Cir. 2003) ("being able to evaluate who is doing the talking is of great importance" to voters). In this litigation, Plaintiffs' witness Atlee Breeland confirmed that information regarding who is paying for the speech is important to voters. Breland was concerned that pro-Personhood advocates attempted to minimize speakers like Breland by linking them to Planned Parenthood. Dep. at 13, Exhibit A to

Defs Opp to Pls. Sum. J.  Breland wanted the voters to know that Parents Against MS-26 was completely independent from Planned Parenthood.  *Id.*  Because Parents Against MS-26 was legally obligated to disclose its donations, Breland was able to highlight her reporting documents to prove to the public that Parents Against MS-26 had received no donations from Planned Parenthood.  *Id.* at 53-54.  Breland knows "for a fact" that people reviewed the information disclosed on the forms.  *Id.* at 55.

The absence of financial reporting would deprive voters of a specific category of information that is critically important to evaluating messages and making informed choices.

## II. Plaintiffs' speech is not *de minimis*.

Although it is unclear whether Plaintiffs are pursuing a facial or as-applied challenge with respect to the $200 thresholds, either challenge fails as a matter of law.  If Plaintiffs are pursuing a facial challenge, the Seventh Circuit has recently noted that every federal court of appeals hearing a facial challenge to reporting and disclosure laws have rejected the challenge and upheld the law.  *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 470 (7th Cir. 2012).

If Plaintiffs contend that the $200 thresholds are unconstitutional as applied to their campaign efforts, that argument also fails as a matter of law.  Unlike the statutory scheme in *Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1034 (9th Cir. 2009), Mississippi exempts *de minimis* speech through its $200 threshold.[1]  Further,

_____

[1]  In *Canyon Ferry*, the court found that requiring a church to register as a political committee solely on the basis of the church's *de minimis* in-kind contributions did not survive the wholly without rationality test.  556 F.3d at 1034.  The *Canyon Ferry* church had allowed the initiative sponsor to photocopy the petition form on the church's copy machine with her own paper, had placed the petitions in the church's foyer; and the pastor had exhorted his parishioners to sign the petition during a regularly scheduled sermon.  *Id.* at 1029.  Of those actions, only the use of the photocopier was an actual election expenditure and that was unquestionably *de*

Plaintiffs own statements indicated that their desired campaign efforts were not *de minimis*. Plaintiffs contend that they desired to influence voters through at least one newspaper advertisement and by distributing posters and flyers. *See* Pls. Sum. Judg. Mem. at 3; *see also* Complaint at ¶ 45 ("Plaintiffs are ready, willing, and able to spend their collective funds on posters, flyers, and local media advertisements in support of the initiative.") While Plaintiffs have not specified what is the maximum amount of money they desired to spend influencing voters, we know the sum was in excess of $200. The vague description they have supplied indicates that their combined efforts would not have been insubstantial.

### III.    *Buckley's* "wholly without rationality" standard exists and is applicable to Plaintiffs' challenge.

Plaintiffs appear to contend that if the "wholly without rationality" standard exists, it is only applicable to facial challenges brought by "large groups" and not to as-applied challenges brought by "small groups." Pl. Br. at 24-26. No court has ever adopted Plaintiffs' limitation on *Buckley*'s standard. Numerous courts – not just one court as contended by Plaintiffs – have applied the standard to as-applied challenges. *See, e.g., Canyon Ferry*, 556 F.3d at 1033; *Bailey v. Maine Com'n on Governmental Ethics and Election Practices*, 2012 WL 4588564, 14 -15 (D.Me. 2012); *Vermont Right to Life Committee, Inc. v. Sorrell*, 2012 WL 2370445, 22 (D.Vt. 2012); *Many Cultures, One Message v. Clements*, 830 F.Supp.2d 1111, 1122, 1180-1181 (W.D.Wash. 2011) (as-applied and facial challenge).

---

*minimus*. Mississippi's $200 threshold would not have required the *Canyon Ferry* church to register.

IV.   **Courts have rejected arguments that a failure to index thresholds to inflation results in a violation of the First Amendment.**

Plaintiffs' claim that a failure to index disclosure and registration thresholds to inflation results in a violation of the First Amendment has been analyzed and rejected by numerous courts. Plaintiffs cite *Randall v. Sorrell*, 548 U.S. 230, 261 (2006), which addressed a situation vastly different that at bar. The issue in *Sorrell* was Vermont's limit on the amount an individual or corporation could contribute to a candidate; the law actually banned contributions over a specific amount. Even then the court found the failure to index to be one of many factors it considered and, actually, a factor that could result in First Amendment violations in the future. *Id.* at 261 ("A failure to index limits means that limits which are already suspiciously low, will almost inevitably become too low over time."). Courts have rejected attempts by plaintiffs to transplant the *Sorrell* court's concern in over a ban on speech (a limitation on contributions) into cases regarding disclosure requirements.

> [Plaintiff] relies on an observation in *Randall v. Sorrell*, 548 U.S. 230, 261, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006), that "[a] failure to index limits means that limits which are already suspiciously low ... will almost inevitably become too low over time." The limits at issue in *Sorrell*, however, were substantive contribution limits, the setting of which presents different considerations than the determination of the threshold for a reporting requirement, and which is subject to different standards of review. Neither we nor the Supreme Court has ever second-guessed a legislative decision not to index a reporting requirement to inflation. Indeed, in *Buckley*, the Court acknowledged that Congress, in setting FECA's $100 reporting threshold, appeared to have simply adopted the threshold used in similar disclosure laws since 1910—i.e., over the course of more than sixty years, without any adjustment for inflation. 424 U.S. at 83, 96 S.Ct. 612. We thus reject NOM's argument that the $100 threshold is unconstitutional simply because it is static.

*National Organization for Marriage v. McKee*, 649 F.3d 34, 60 -61 (1ˢᵗ Cir. 2011); *see also*

*Vermont Right to Life Committee, Inc.*, 2012 WL 2370445 at 22 ("Failure to index is far less a

concern in the realm of disclosure thresholds."). As the *Bowen* court noted in analyzing *Sorrell* and rejecting a similar argument about the failure to index reporting requirements to inflation, "Were the Court to accept Plaintiffs' current argument, it would call into question this and every other statutory provision in which the legislature thought to classify by dollar amount without tying that amount to some articulated rate of inflation. The Court is unwilling to render a decision that would create such a striking precedent." *ProtectMarriage.com v. Bowen*, 830 F.Supp.2d 914, 947 (E.D.Cal. 2011).

### Conclusion

The legal conclusions reached *Justice v. Hosemann*, 829 F.Supp.2d 504 (N.D.Miss. 2011), remain correct and the State Defendants are entitled to summary judgment as a matter of law.

This the 18th day of December, 2012.

> **DELBERT HOSEMANN, in his official capacity as Mississippi Secretary of State**
>
> **BY:  JIM HOOD, ATTORNEY GENERAL
> STATE OF MISSISSIPPI**
>
> BY:   /s/ Harold E. Pizzetta III
> HAROLD E. PIZZETTA, III, MSB NO.99867
> ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3816
Facsimile: (601) 359-2003
hpizz@ago.state.ms.us

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically with the Clerk of Court using the Court's ECF system and thereby served on the following persons:

Russell Latino, III
Post Office Box 131
Jackson, MS  39205-0131
rlatino@wellsmarble.com

Paul V. Avelar
398 S. Mill Avenue, Suite 301
Tempe, AZ 85281
pavelar@ij.org

Steven M. Simpson
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
ssimpson@ij.org

**THIS**, the 18th day of December, 2012.

BY:     /s/ Harold E. Pizzetta III
        HAROLD E. PIZZETTA, III

7