IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GORDON VANCE JUSTICE, JR., et al.                                    PLAINTIFFS

V.                                                    CAUSE NO.: 3:11-CV-138-SA-SAA

DELBERT HOSEMANN, in his official
capacity as Mississippi Secretary of State;
JIM HOOD, in his official capacity as
Attorney General of the State of Mississippi            DEFENDANTS


MEMORANDUM OPINION

Presently before the Court are the parties' cross-motions for summary judgment [42,44], Defendants' Motion to Exclude [46], and Defendants' Motion to Strike [53]. Plaintiffs challenge the constitutionality of Mississippi's campaign finance disclosure scheme as it applies to small groups and individuals intending to support or oppose state constitutional ballot measures. The State defends the disclosure scheme, contending that it imposes no undue constitutional hardship on groups such as Plaintiffs'.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are "a group of like-minded friends and neighbors" who have been meeting regularly for the past few years, as a group and with others, to discuss the political issues of the day. According to Plaintiffs, they "have no formal organization or structure. They meet at their homes, at restaurants, and wherever else is convenient. They have no officers or directors, no bank account, and no member dues." Plaintiffs initially wished to associate with one another and with others for the purposes of running independent political advertisements advocating the passage of Initiative 31, a proposed amendment to the Mississippi Constitution which was indeed passed by popular vote during a state-wide election held November 8, 2011. Initiative 31

proposed to "amend the Mississippi Constitution to prohibit state and local government from taking private property by eminent domain and then conveying it to other persons or private businesses for a period of 10 years after acquisition."

Plaintiffs sought to pool funds in order to purchase posters, buy advertising in a local newspaper, and distribute flyers supporting the Initiative. However, in order to do so, Plaintiffs determined that they would have to register as a "political committee" under Mississippi campaign finance law. Moreover, Plaintiffs additionally sought to individually spend in excess of $200 of their own money to support Initiative 31, but, even as individuals, were required to report their involvement to the State.

Plaintiffs thereafter filed suit in this Court, seeking a declaratory judgment that the reporting and disclosure scheme is unconstitutional as applied to Plaintiffs. Following a hearing, this Court denied Plaintiffs' petition for a temporary restraining order and preliminary injunction. On November 8, 2011, the state-wide election was held as scheduled and Initiative 31 was approved by popular vote. Plaintiffs continued to maintain the suit, contending that although they were unable to litigate their claims prior to the 2011 election, they continue to desire to speak out about constitutional ballot measures in future elections.

Under Mississippi law, groups seeking to support or oppose state-wide balloted measures must look to two Chapters of the Mississippi Code, both of which can be found in Title 23. Chapter 15 sets forth the Mississippi Election Code generally, while Chapter 17 governs amendments to the Mississippi Constitution by voter initiative.

Under Chapter 15, a political committee is defined as "any committee, party, club, association, political action committee, campaign committee or other groups of persons or affiliated organizations which receives contributions aggregating in excess of [$200] during a

calendar year, or has made such expenditures aggregating in excess of [$200] during a calendar year." MISS. CODE ANN. § 23-15-801(c). Political committees that "make expenditures for the purpose of influencing or attempting to influence the action of voters for or against the nomination for election, or election, of one or more candidates *or balloted measures* at such election" are required to file a number of reports. MISS. CODE ANN. § 23-15-807(b) (emphasis added). First, in any calendar year during which there is a regularly scheduled election, such committees must file a "preelection report." Id. at § 23-15-807(b)(i). Additionally, once every four years, political committees are required to file a "periodic report." Id. at § 23-15-807 (b)(ii). Finally, in every calendar year except those in which a periodic report must be filed, political committees must file a "calendar year" or annual report. Id. at § 23-15-807 (b)(iii). The obligation to file such reports is extinguished only upon the submission of a "final report" indicating that the committee "will no longer receive any contributions or make any disbursement and that [the committee] has no outstanding debts or obligations." Id. at § 23-15-807(a).

For each of the Chapter 15 reports, the content requirements remain the same and are found under Mississippi Code § 23-15-807(d). Chapter 15 reports must include:

- The total amount of contributions received in the covered period. MISS. CODE ANN. § 23-15-807(d)(i).

- The total amount of expenditures for the covered period. Id. at § 23-15-807(d)(i).

- The total amount of contributions received in the covered year. Id.

- The total amount of expenditures for the covered year. Id.

- The total amount of cash on hand. Id. at § 23-15-807(d)(iii).

- The identification of each person or political committee who, within the covered reporting period, makes a contribution when that person's or political committee's annual contributions exceed $200 in the aggregate. Id. at § 23-15-807(d)(ii)(1).

- The identification of each person or political committee who, within the covered reporting period, receives an expenditure from the committee when the committee's annual expenditures to that person or political committee exceed $200 in the aggregate. Id. at § 23-15-807(d)(ii)(2).

Additionally, Chapter 15 also places requirements on individuals under its independent expenditure provision. MISS. CODE ANN. § 23-15-809(a). Under that provision, every person "who makes independent expenditures in an aggregate amount or value in excess of [$200] during a calendar year shall file a statement containing the information required under Section 23-15-807." Id. Notably, however, the independent expenditure provision also provides that "[s]tatements required to be filed by this section shall include . . . "[i]nformation indicating whether the independent expenditure is in support of, or in opposition to, the candidate involved." Id. at § 23-15-809(b)(i).

On the other hand, Chapter 17 of the Mississippi Code governs amendments to the Mississippi Constitution by way of voter initiative. MISS. CODE ANN. § 23-17-1 et seq. That Chapter sets forth its own parameters for political committees. Under Chapter 17, a person is defined as "any individual, family, firm, corporation, partnership, association or other legal entity." MISS. CODE ANN. § 23-17-47(b). A political committee is "any person, other than an individual, who receives contributions or makes expenditures for the purpose of influencing the passage or defeat of a measure on the ballot." Id. at § 23-17-47(c).[1] "Measure" is defined as "an amendment to the Mississippi Constitution proposed by a petition of qualified electors under Section 273, Mississippi Constitution of 1890." Id. at § 23-17-1(1). Similar to Chapter 15, any

---

[1] Although not addressed by the parties, the Court notes that based on a plain reading of the statute there is least some ambiguity as to whether Plaintiffs' informal association should even be properly categorized as an "association or other legal entity" under § 23-17-47(b). The Court is, however, able to definitively conclude that such an association should not be considered an "individual, family, firm, corporation, [or] partnership."

political committee that receives contributions or makes expenditures in excess of $200 is required to file financial reports with the Secretary of State.  Id. at § 23-17-51 (1).  Contribution is defined, in pertinent part, to encompass "any gift, subscription, loan, advance, money or anything of value made by a person or political committee . . . but does not include noncompensated, nonreiumbursed volunteer personal services."  Id. at § 23-17-47(a).  Chapter 17 financial reports are to be filed monthly and must continue until all contributions and expenditures cease.  Id. at § 23-17-51(3).

For purposes of Chapter 17, each political committee report must include:

- The name, address, and telephone number of the committee filing the statement. MISS. CODE ANN. § 23-17-53(a).

- The total amount of contributions received during the covered period.  Id. at § 23-17-53(b)(1).

- The total amount of expenditures made during the covered period.  Id. at § 23-17-53(b)(2).

- The cumulative amount of those respective totals.  Id. at § 23-17-53(b)(3).

- The balance of cash and cash equivalents on hand at the beginning and end of the covered period.  Id. at § 23-17-53(b)(4).

- The total amount of contributions received in the covered period from persons contributing less than $200.  Id. at § 23-17-53(b)(v).

- The total amount of contributions received in the covered period from persons contributing in excess of $200.  Id. at § 23-17-53(b)(vi).

- The name and street address of each person contributing in excess of $200 during the covered period with the amount of contribution, the date of receipt, and the cumulative amount contributed by that person.  Id. at § 23-17-53(b)(vii).

Notably, Chapter 17 also places filing requirements on individuals.  Under Chapter 17, any individual "who on his or her own behalf expends in excess of [$200] for the purpose of influencing the passage or defeat of a measure" must file monthly financial reports with the

5

Secretary of State. MISS. CODE ANN. § 23-17-51 (2). "Measure" is again defined as "an amendment to the Mississippi Constitution proposed by a petition of qualified electors under Section 273, Mississippi Constitution of 1890." Id. at § 23-17-1(1). That individual must continue to file reports until all expenditures cease. Id. at § 23-17-51(3). Chapter 17 individual reports must include:

- The name, address, and telephone number of the person filing the statement. MISS. CODE ANN. § 23-17-53 (a).

- The total amount of expenditures made during the covered period. Id. at § 23-17-53(c)(i).

- The cumulative amount of that total for each measure. Id. at § 23-17-53(c)(ii).

- The name and street address of each person to whom an expenditure of greater than $200 was made, the amount of each separate expenditure made to that person during the covered period, and the purpose of the expenditure. Id. at § 23-17-53(c)(iii).

- The total amount of contributions received during the covered period. Id. at § 23-17-53(c)(iv).

- The cumulative amount of contributions received for each measure. Id. at § 23-17-53(c)(iv).

- The name and street address of each person who contributed more than $200 and the amount contributed. Id. at § 23-17-53(c)(iv).

Thus, while the individual and political committee reporting requirements under Chapter 15 and Chapter 17 are similar in a number of respects, there remain material differences between the two. First, as to their respective applications, the Chapter 15 political committee requirements apply to associations that "make expenditures for the purpose of influencing or attempting to influence the action of voters for or against the nomination for election, or election, of one or more candidates *or balloted measures at such election*." MISS. CODE ANN. § 23-15-807(b) (emphasis added). On the other hand, Chapter 17 applies in a more limited but arguably

duplicitous context, placing requirements only on individuals and associations who receive or expend funds for the "purpose of influencing the passage or defeat of a [constitutional] measure on the ballot." MISS. CODE. ANN. § 23-17-47(c) (defining a political committee); Id. at § 23-17-51(2) (placing an individual expenditure requirement on individual persons); Id. at § 23-17-1(1) (defining "measure" as a constitutional measure).[2]  As to their requirements, Chapter 15 and Chapter 17 differ as to both when reports are required, and what those respective reports must include.

Although for present purposes the State claims that only Chapter 17 applies to groups or individuals attempting to influence constitutional measures, Plaintiffs argue that being forced to navigate through the potentially conflicting statutes only serves to multiply the burdens imposed by the scheme.  Claiming that these requirements effectively chilled and continue to chill their attempt to speak out regarding constitutional ballot measures, Plaintiffs seek to have this Court determine that Mississippi's political financial disclosure regime places an unconstitutional burden on Plaintiff's First Amendment rights.  The Court turns to the merits of the parties' contentions.

<u>STANDARD OF LAW</u>

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[2] The Court finds it noteworthy while Chapter 17 indeed applies only to constitutional ballot measures, a potential proponent must cross-reference the Chapter's definitional section to reach that conclusion.

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

DISCUSSION AND ANALYSIS

*I. Standing*

Although not heavily contested between the parties, this Court need initially consider whether the Plaintiffs have standing to maintain the current action. Notably, although Plaintiffs complaint challenged the constitutionality of Mississippi's political finance disclosure scheme both facially and as-applied, the Plaintiffs' arguments at the summary judgment stage have been almost exclusively grounded in an as-applied context. Based on the briefing of the parties, the

Court considers the Plaintiffs' challenge only under an as-applied framework, and deems the facial challenge abandoned. Int'l Women's Day March Planning Comm. v. City of San Antonio, 619 F.3d 346, 356 (5th Cir. 2010) (quoting Keelan v. Majesco Software Inc., 407 F.3d 332, 340 (5th Cir. 2005) ("If a party wishes to preserve an argument for appeal, the party 'must press and not merely intimate the argument during the proceedings before the district court.'").

Under Fifth Circuit and United States Supreme Court precedent, the Court determines that the Plaintiffs at issue indeed have standing to bring their as-applied challenge. In order to maintain standing for purposes of Article III jurisdiction, a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury. Houston Chronicle Pub. Co. v. City of League City, 488 F.3d 613, 617 (5th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Although here, Plaintiffs' action is a pre-enforcement challenge, the Fifth Circuit has clearly established that "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." Id. (internal citations omitted). This is likely so because "it is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." Id. (quoting Steffel v. Thompson, 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)).

Because mere allegations of a "subjective chill" are not an adequate substitute for a present objective harm or threat, however, a plaintiff relying on the chilling exception must still demonstrate the likelihood of imminent future prosecution. Id. at 618-19. Once that showing is fulfilled, however, the Fifth Circuit has before at least implied that plaintiffs should have standing to bring either an as-applied or facial challenge. Id. at 623 (finding that plaintiffs' as-

applied challenge failed because it was underpinned only by "*future* enforcement *intentions*.") (emphasis in original); <u>see</u> <u>also</u> <u>Citizens United v. Federal Election Comm'n</u>, 558 U.S. 310, 331, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) (articulating that "the distinction facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."); <u>Gonzales v. Carhart</u>, 550 U.S. 124, 167, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) (noting that in the case of a pre-enforcement challenge the "facial attack should not have been entertained in the first instance" and enunciating that when presented with "discrete and well-defined instances a particular condition has or is likely to occur in which the [conduct] prohibited by the Act [will take place]" an as-applied challenge is the correct mechanism).

In the case at hand, Plaintiffs discretely aver that they sought to purchase posters, buy advertising in a local newspaper, and distribute flyers supporting the Initiative. They aver, and Defendants cannot contest, that those expenses would have indeed exceeded the State's $200 registration threshold requirement. Moreover, the State refuses to contest that Chapter 17 would have applied with full-force to Plaintiffs as soon as they crossed that monetary threshold. Additionally, the State did apply, at the time of Plaintiffs' desired involvement, and continues to apply the statute to such groups. In Assistant Secretary of State Kim Turner's deposition, for instance, she noted that a contemporaneously active association who had apparently received in excess of $200 in contributions "need[ed] to be registered." Thus, the Court finds that Plaintiffs have sufficiently shown more than "subjective chill" and have standing to raise the current challenge.

## II. First Amendment Challenges

Having concluded that standing is present, the Court turns to the merits of the action. Under the First Amendment, Plaintiffs challenge the requirements placed on both individuals and associations attempting to influence constitutional ballot measures in Mississippi. In order to evaluate those respective challenges, the Court must first determine what level of scrutiny to apply. That determination, in turn, will guide the remainder of the Court's analysis.

Generally, "[l]aws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United, 558 U.S. at 340, 130 S. Ct. 876. On the other hand, however, the Court has before "subjected strictures on campaign-related speech that [it] found less onerous to a lower level of scrutiny." Arizona Free Enter. Club's Freedom Club PAC v. Bennett, —U.S.—, 131 S. Ct. 2806, 2817, 180 L. Ed. 2d 664 (2011). Significant for present purposes, "[d]isclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' and 'do not prevent anyone from speaking.'" Citizens United, 558 U.S. at 366-67, 131 S. Ct. 2806; Asgeirsson v. Abbott, 696 F.3d 454, 463 (5th Cir. 2012) ("For First Amendment purposes, the requirement to make information public is treated more leniently than are other speech regulations. The Court has often upheld disclosure provisions even where it has struck down other regulations of speech in the same statutes."). Thus, with that in mind, "[t]he Court has [consequently] subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Id. (citing Buckley v. Valeo, 424 U.S. 1, 66, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) (Buckley I)).

*A. Exacting Scrutiny*

Although Plaintiffs contend that strict scrutiny should apply here, they acknowledge that Mississippi places no substantive cap on contributions, but instead merely requires the disclosure of information relating to contributions received and expended. Particularly damaging to Plaintiffs' position, however, is the fact that the Fifth Circuit recently articulated that "disclosure laws" are subject to "exacting rather than strict scrutiny." See Asgeirsson, 696 F.3d at 462. Moreover, as the Eleventh Circuit recently opined in an extraordinarily similar context, applying strict scrutiny to a disclosure scheme would run in contradiction to all Circuit Courts to have recently considered the question. Worley v. Florida Sec. of State, 717 F.3d 1238, 1244 (11th Cir. 2013) (collecting cases from the First, Seventh, Eighth, Ninth, and Tenth Circuits). Because Mississippi's statutory scheme places no cap on contributions, instead merely imposing reporting and disclosure requirements, this Court applies exacting scrutiny to Mississippi's political finance disclosure requirements. Under that framework, in order to withstand constitutional scrutiny, there must be a substantial relation between the disclosure requirement and a sufficiently important governmental interest. Asgeirsson, 696 F.3d at 464 n.11 (citing Citizens United, 130 S. Ct. at 914).

*B. Sufficiently Important Governmental Interest*

In support of its registration, recording, and reporting requirements, Mississippi relies almost exclusively on the informational interest allegedly served by the statutory scheme's requirements.[3] Plaintiffs ardently argue that there is no such interest in the context of

---

[3] Although the State additionally contends that the system furthers its interest in "gather[ing] data necessary to deter and detect violations of campaign finance laws," no Circuit to have considered the government's interest in the context of a ballot initiative has recognized such a theory and the Court refuses to do so here.

constitutional ballot measures, or, that at the very least, it is significantly diminished in regard to such measures.

In <u>Buckley I</u>, the Supreme Court found that disclosure laws could be supported by at least three rationales in the context of a candidate election.  424 U.S. 1, 66-69, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976).  In regard to the potential information interest of the State, the Court articulated:

> [D]isclosure provides the electorate with information as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office. It allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office.

<u>Buckley I</u>, 424 U.S. at 66, 96 S. Ct. 612 (footnote omitted).

Plaintiffs argue that this informational interest is limited to the context of candidates running for office; they argue that it does not apply, or alternatively, applies with much less force in the context of ballot initiatives.  Plaintiffs note that the while the Supreme Court has discussed the utility of disclosure laws in the ballot issue context on three occasions, it has done so only in dicta.

First, in <u>First National Bank of Boston v. Bellotti</u>, 435 U.S. 765, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978), the Supreme Court invalidated a Massachusetts statute prohibiting corporate expenditures in ballot-issue campaigns.  <u>Id.</u> at 767, 98 S. Ct. 1407.  However, the Court stated that people "may consider, in making their judgment, the source and credibility of the advocate . . . . Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected." <u>Id.</u> at 791-92, 792 n.32, 98 S. Ct. 1407.

13

Second, in <u>Citizens Against Rent Control v. City of Berkely</u>, 454 U.S. 290, 102 S. Ct. 434, 70 L. Ed. 2d 492 (1981), the Court invalidated a municipal ordinance setting a cap on contributions to committees supporting or opposing ballot measures. <u>Id.</u> at 291-94, 102 S. Ct. 434. The Court concluded that the cap was not necessary because another provision in the ordinance mandated disclosure, stating, "The integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions." <u>Id.</u> at 299-300, 102 S. Ct. 434.

Third, in <u>Buckley v. American Const. Law Found., Inc.</u>, 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999) (<u>Buckley II</u>), the Court invalidated a Colorado statute requiring the disclosure of the names of paid initiative circulators and the amount paid to each circulator. However, the Court, remarking on requirements that were not being challenged, stated:

> We explained in [<u>Buckley I</u>] that disclosure provides the electorate with information "as to where political campaign money comes from and how it is spent," thereby aiding electors in evaluating those who seek their vote. We further observed that disclosure requirements "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. . . . In this regard, the State and supporting amici stress the importance of disclosure as a control or check on domination of the initiative process by affluent special interest groups. . . . Disclosure of the names of initiative sponsors, and of the amounts they have spent gathering support for their initiatives, responds to that substantial state interest. . . . Through the disclosure requirements that remain in place, voters are informed of the source and amount of money spent by proponents to get a measure on the ballot; in other words, voters will be told who has proposed a measure and who has provided funds for its circulation.

<u>Id.</u> at 202-03, 119 S. Ct. 636 (citations, brackets, and internal quotation marks omitted).

Persuasively, the Eleventh Circuit recently joined the ranks of courts recognizing the informational interest justification for ballot initiatives. <u>Worley v. Florida Secretary of State</u>, 717 F. 3d 1238, 1249 (11th Cir. 2013); <u>see also</u> <u>Family PAC v. McKenna</u>, 685 F.3d 800, 803-14 (9th Cir. 2012); <u>Nat'l Org. for Marriage, Inc. v. McKee</u> (<u>McKee II</u>), 669 F.3d 34, 39-41(1st Cir.

2012); Nat'l Org for Marriage, Inc v. McKee (McKee I), 649 F.3d 34, 41-44, 55-61 (1st Cir. 2011). There, the court considered, and rejected, many of the arguments presented by Plaintiffs here. See id. at 1247-1249. Relying principally on the aforementioned Supreme Court precedent, the Eleventh Circuit concluded that "promoting an informed electorate in a ballot issue election is a sufficiently important governmental interest to justify" the imposition of political committee regulations. Id. at 1249. Based on both Supreme Court precedent and persuasive Circuit Court precedent, this Court determines that promoting an informed electorate, even in regard to constitutional ballot measures, is a sufficiently important governmental interest.

*C. Substantial Relation*

As articulated in the Court's previously entered order, when evaluating the substantial relation between the State's interest and the measures imposed to achieve that interest, the Court must assess the "fit" between the two. See Canyon Ferry Road Baptist Church of East Helena v. Unsworth, 556 F.3d 1021, 1034 (9th Cir. 2009). This inquiry is "one of degree, not kind, for it is well established that, in the ordinary case, a state informational interest is sufficient to justify the mandatory reporting of expenditures and contributions in the context of ballot initiatives." Id. (citing Alaska Right to Life Comm. v. Miles, 441 F.3d 773, 789-92 (9th Cir. 2006); Cal. Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1189 (9th Cir. 2007) (CPLC II)).

Plaintiffs argue that "no informational interest can exist at the point that Mississippi imposes [its registration, reporting, and disclosure] burdens." In other words, Plaintiffs argue that the statutes' threshold amount for registration and disclosure of anything greater than $200 is too low compared to the burdens the subsequent requirements impose.

The disagreement between the parties in regard to the "fit" largely boils down to just how exacting the Court's scrutiny should be. Mississippi argues that the "fit" or substantial relation

15

should be considered only in regard to the State's informational interest in general.  In terms of the degree to which that interest may vary based on the size of respective associations, Mississippi contends that the Court should only weigh the legislature's threshold determination under the lens of "wholly without rationality" review.  Stated another way, Mississippi argues that exacting scrutiny should apply to the scheme generally, but complaints regarding the legislature's threshold determination for which groups are regulated should only be second-guessed if that determination was "wholly without rationality."  Plaintiffs, on the other hand, argue that this approach completely defangs the exacting scrutiny framework, converting the inquiry into merely a rational basis analysis and precluding small groups from adequately raising an as-applied challenge.

In support of the State's proposed "wholly without rationality" standard, Defendants point primarily to the First Circuit's analysis in McKee I.   There, the court gave extensive attention to the Supreme Court's decision in Buckley I, and noted that "[f]ollowing [Buckley I], we have granted 'judicial deference to plausible legislative judgments' as to the appropriate location of a reporting threshold, and have upheld such legislative determinations unless they are 'wholly without rationality.'"   McKee I, 649 F. 3d at 60 (internal citations omitted).  Accordingly, the court found that the particular threshold amount at issue was not "wholly without rationality" and was thus constitutional.  Id. at 61.

In Buckley I, however, the Supreme Court considered whether a $10 record keeping threshold and a $100 disclosure threshold were sufficient to survive constitutional scrutiny in the face of an overbreadth challenge.  Buckley I, 424 U.S. at 82-83, 96 S. Ct. 612.  The Court stated:

> The $10 and $100 thresholds are indeed low. Contributors of relatively small amounts are likely to be especially sensitive to recording or disclosure of their political preferences. These strict requirements may well discourage participation by some citizens in the political process, a result that Congress hardly could have

intended. Indeed, there is little in the legislative history to indicate that Congress focused carefully on the appropriate level at which to require recording and disclosure. Rather, it seems merely to have adopted the thresholds existing in similar disclosure laws since. But we cannot require Congress to establish that it has chosen the highest reasonable threshold. The line is necessarily a judgmental decision, best left in the context of this complex legislation to congressional discretion. *We cannot say, on this bare record, that the limits designated are wholly without rationality.*

Id. at 83, 96 S. Ct. 612 (emphasis added). Unfortunately, however, Buckley I does not necessarily provide binding precedent for the present case. Notably, the challenge to the reporting requirements considered in Buckley I was an overbreadth challenge, unlike the as-applied challenge raised here. Indeed, under the overbreadth doctrine, "a statute is *facially* invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008) (emphasis added). Significantly, "invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects" and its application subsequently requires that the "statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." Id., 128 S. Ct. 1830. Stated alternatively, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." Id. at 293.

Although neither is invalidation under the exacting scrutiny framework "to be casually employed," courts have remained ardent that exacting scrutiny is "more than a rubber stamp." Worley, 717 F.3d at 1249 (quoting Minnesota Citizens Concerned for Life v. Swanson, 692 F.3d 864, 876 (8th Cir. 2012)). Under exacting scrutiny, the Court has "closely scrutinized disclosure requirements," demanding that "the strength of the governmental interest…reflect the seriousness of the actual burden on First Amendment rights. Davis v. Fed. Election Comm'n, 554 U.S. 724, 744, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008). The Court has showed no hesitancy in striking down impermissible constitutional infringements under such review. See

Minn. Citizens, 692 F.3d at 875 (collecting cases and noting that although possibly less rigorous than strict scrutiny, "[t]he Supreme Court has not hesitated to hold laws unconstitutional under [exacting scrutiny].").  Thus, without additional guidance from the Fifth Circuit, this Court is hesitant to simply import the more deferential overbreadth framework into the exacting scrutiny context.

Persuasively, both the Tenth and Eleventh Circuits recently subjected even the monetary threshold registration requirements of two voter initiative statutes to exacting scrutiny, declining to extend the "wholly without rationality" standard of review to the legislatures' threshold determination.  See Sampson v. Buescher, 625 F.3d 1247, 1247 (10th Cir. 2010); Worley, 717 F.3d at 1238.

Illustratively, in Sampson v. Buescher, the court considered an as-applied challenge to Colorado's campaign committee requirements mandating that groups seeking to support or oppose a ballot issue register and report as a political committee.  625 F.3d at 1249.  There, state law required registration once the organization had raised or expended in excess of $200.  Id.  Such registration required the committee to identify the name of the committee, the name of a registered agent, the committee's address and telephone number, the identities of all affiliated candidates or committees, and the purpose or nature of the committee.  Id. at 1250.  The committee was further required to maintain a separate checking account, report the names and addresses of persons who contributed twenty dollars or more, and include the employer and occupation for anyone contributing one hundred dollars or more.  Id.

The plaintiffs at issue had raised less than one thousand dollars in monetary and in-kind contributions.  Id. at 1249.  The court ultimately concluded that "[t]here is virtually no proper governmental interest in imposing disclosure requirements on ballot-initiative committees that

raise and expend so little money, and that limited interest cannot justify the burden that these requirements impose on such a committee." Id.  Although the court downplayed the significance of the state's informational interest in the ballot initiative context, the court ultimately assumed such an interest at least existed.  Id. at 1259 (concluding that although attenuated, "there is a legitimate public interest in financial disclosure from campaign organizations.").

The court therefore carefully balanced the burdens of the thorough regulatory scheme, placing particular emphasis in the Supreme Court's admonition that "[p]rolix laws chill speech for the same reason that vague laws chill speech: People of common intelligence must necessarily guess at the law's meaning and differ as to its application."  Id.  (quoting Citizens United, 558 U.S. at 324, 130 S. Ct. at 889).  Accordingly, the court noted that the contributions at issue were "sufficiently small that they say little about the contributors' views of their financial interest in the [ballot] issue."  Id. at 1260.  Juxtaposed with the burden imposed by such requirements, the court found that "the financial burden of state regulation on [p]laintiffs' freedom of association approache[d] or exceede[d] the value of their financial contributions to their political effort; and the governmental interest in imposing those regulations [was] minimal, if not nonexistent, in light of the small size of the contributions."  Id. at 1261.  Thus, the court found that the burden imposed by the scheme could simply not be constitutionally borne by the limited value of such information.  Id.

Similarly, the Eleventh Circuit recently considered a similar disclosure scheme in Worley.  717 F. 3d at 1249.  Notably, the Eleventh's Circuit decision in Worley was handed down well after this Court's Memorandum Opinion on Plaintiffs' motion for a temporary restraining order and preliminary injunction entered November 3, 2011.  There, the Eleventh Circuit considered a facial challenge to Florida's political committee requirements, which, in

pertinent part, requires persons raising or expending in excess of five hundred dollars annually to register and report as a political committee.  Id.  Once registered, Florida political committees are required to appoint a treasurer and establish a campaign depository, make all expenditures by check, keep detailed records, file regular reports itemizing contributions and expenditures, submit to random audits, and maintain records for at least two years following the pertinent election.  Id. at 1241.

Although the court ultimately held that the statutory framework withstood constitutional scrutiny, the court subjected it, including the monetary threshold, to exacting scrutiny.  Id. at 1251 ("While we hold that the disclosure scheme survives exacting scrutiny, we nevertheless find the [First Circuit's "wholly without rationality" discussion] assessing disclosure thresholds to be instructive.").  Further, however, the court noted that such deference was particularly applicable in facial challenges to such statutes.  Id.

This Court is particularly persuaded by the Eleventh Circuit's recent announcement in Worley, and finds significant the court's refusal to adopt the "wholly without rationality" step within the larger exacting scrutiny framework.  Id.  Additionally, the Court is mindful that while the Eleventh Circuit articulated that the discussion regarding disclosure thresholds in McKee I was "instructive," the Eleventh Circuit cautioned that the scheme presently before it survived "exacting scrutiny."  Id.  Thus, in considering Plaintiffs' as-applied challenge, this Court now considers whether Mississippi's interest in the registration and reporting requirements constitutionally carry the regulatory burden the requirements likewise impose on individuals and groups such as the Plaintiffs here.

*1. Political Committee Registration Requirement*

Even granting leeway to the State and assuming that only Chapter 17 applies to persons and groups attempting to support or oppose constitutional ballot measures, Mississippi law compels groups to commence filing financial reports with the Mississippi Secretary of State as soon as they receive contributions or make expenditures in excess of $200. MISS. CODE ANN. § 23-17-49(1). In conjunction with that requirement and within ten days of crossing the $200 threshold, those political committees must file a statement of organization and include the name and address of the committee and all officers, indicate the name of the director of the committee and the treasurer, and set forth a brief statement identifying the measure that the committee seeks to pass or defeat. Id. at § 23-17-49(1)-(2).

Chapter 17 committees must then file monthly reports with the Secretary of State until all contributions and expenditures cease. Id. at § 23-17-51(3). Those reports must include detailed information regarding both the committee's funding sources and organizations which receive disbursements from the committee. Id. at § 23-17-53(a)-(b). Additionally, they must also include the totals for the committee's cash on hand and cash equivalents. Id.

As noted above, the Tenth Circuit was confronted with a similar disclosure scheme. Sampson, 625 F.3d at 1249-1250. Again, there, Colorado law converted any group that had as its major purpose supporting or opposing a ballot measure and accepted contributions or made expenditures in excess of $200 into an issue committee. Id. Issue committees were thereafter required to file a statement of registration, were required to open and maintain a separate bank account, and were prohibited from expending or accepting in excess of $100 in cash. Id. at 1249. They were required to report all contributions and expenditures, including the name and address

for persons contributing $20 or more and the occupation and employer for persons contributing $100 or more.  Id.

The Colorado plaintiffs were an informal association of neighbors opposed to the annexation of their unincorporated residential development.  Id.  In their attempt to campaign against annexation, the plaintiffs wrote letters, distributed flyers, and printed "No Annexation" signs.  Id. at 1251.  In all, the committee expended approximately $782.02 for signs, a banner, post cards, and postage.  Id. at 1254.  In gauging the "fit" between Colorado's interest in the disclosure requirements and the burden absorbed by plaintiffs, the court noted that the funds at issue were "sufficiently small that they say little about the contributors' views of their financial interest" in the substantive ballot measure.  Id. at 1261.  Weighing the respective interests further, the court held that "the financial burden of state regulation on Plaintiffs' freedom of association approaches or exceeds the value of their financial contributions to their political effort; and the governmental interest in imposing those regulations is minimal, if not nonexistent, in light of the small size of the contributions."  Id.

Moreover, in Canyon Ferry, the Ninth Circuit held even under a more lenient wholly without rationality analysis that Montana's zero-dollar threshold for disclosure was unconstitutional as applied to in-kind de minimis contributions.  556 F.3d at 1034.  There, under Montana law, "a political committee that is not specifically organized or maintained for the primary purpose of influencing elections but that may incidentally become a political committee by making a contribution or expenditure to support or oppose a candidate and/or issue" was deemed an "incidental committee."  Id. at 1026.  Incidental committees were thereafter required to report all transactions that were contributions or expenditures and were made in connection with a statewide issue.  Id. at 1027.

The plaintiffs in that case were members of a church that had sought to express support for an amendment to the Montana constitution. Id. at 1024. In furtherance of that aim, church members printed out the petition and made copies on the church's copy machine, placed copies of the petition in the church foyer, distributed flyers, advertised the screening of a simulcast event through public service announcements on local radio stations, and aired the simulcast program at a church service. Id.

In analyzing the challengers' claim that the scheme violated the First Amendment, the court noted that "in the ballot issue context, the relevant informational goal is to inform voters as to 'who backs or opposes a given initiative' financially, so that others will 'have a pretty good idea of who stands to benefit from the legislation.'" Id. at 1032. Further, "[a]s a matter of common-sense, the value of this *financial* information to the voters declines drastically as the value of the expenditure or contribution sinks to a negligible level." Id. at 1033. Articulating that if even the Supreme Court's rationality test "for disclosure levels has any force at all, there must be a level below which mandatory disclosure of campaign expenditures by incidental committees' runs afoul of the First Amendment," the court held that the requirements impermissibly infringed upon the group's free speech rights. Id. at 1034.

Turning to the case at hand, the Court finds that Mississippi's requirements for groups raising or expending in excess of $200 are too burdensome. Even under the State's now enunciated view of the regulatory scheme, as soon as informal associations in Mississippi accept or expend funds in excess of $200, they are compelled to form a political committee and file a statement of organization with the Mississippi Secretary of State. Having crossed that threshold, the committee takes on monthly reporting obligations that are not extinguished until the committee no longer receives funds or makes expenditures. Further, although the State contends

that the required forms are neither complex nor difficult to complete, the Court finds significant the fact that the forms do not comport with the statutes at issue. Thus, even if a potential advocate follows the state's own instructions, he or she might nonetheless be fearful of a failure to comport.

Although the State attempts to assuage the issue by ensuring that its enforcement is lax, the statute's plain wording presents no such gentle assurances. The statute imposes significant criminal penalties for violators, including both monetary penalties and jail time. Additionally, despite the fact that the Secretary of State has published a number of informational handbooks and pamphlets to attempt to assist potential speakers in achieving compliance, those sources leave many of the aforementioned ambiguities unresolved. That published guidance primarily reiterates the importance of complying with the applicable requirements, emphasizing that "[i]nitiative sponsors and all individuals active in the initiative process must become familiar with the various laws regarding the conduct and regulation of elections." Constitutional Initiative in Mississippi: A Citizen's Guide 11 (2009). Moreover, the published guidance plainly articulates, "[e]ngaging in prohibited or illegal campaign practices can lead to criminal prosecution and other liability." Id. According to the statute's text, "[a]ny violation of Sections 23-17-49 through 23-17-59 is punishable by imprisonment in the county jail for not more than one (1) year, or a fine not to exceed ($1,000), or by both such fine and imprisonment." MISS. CODE ANN. § 23-17-61.

Finally, the Court finds that the overlapping requirements of Chapter 15 and Chapter 17 indeed serve to add to the burden on potential speakers. Despite the fact that the State contends only Chapter 17 applies, the language of the statute reveals no such caveat, and the parties have been unable to point the Court to any judicial decisions confirming that position as a reality.

Moreover, the Court places weight in the simple fact that the Secretary of State's published guidance fails to preclude application of Chapter 15 to persons attempting to influence constitutional ballot initiatives. See Campaign Finance Guide: Ensuring Compliance and Improving Disclosure 12 (2010) (explaining that "[a] political committee is any committee, party, club, association, political action committee, or other group that makes contributions or disbursements of more than $200 aggregate in a calendar year toward influencing or attempting to influence voters."). Although the Chapter 17 political committee guidance cross-references only the punitive section of Chapter 15, the guide explicitly disclaims any reliance on that publication to avoid prosecution. It states, "[t]his guide is for general information purposes only. Initiative sponsors should review the constitutional and statutory provisions related to Mississippi's constitutional initiative and the relevant case law." Constitutional Initiative in Mississippi: A Citizen's Guide 11 (emphasis added); see also id. at 10 ("No attempt to include all campaign finance disclosure requirements is made in this publication. Refer to the law in Miss. Code Ann. §§ 23-17-47 through 23-17-53 (1972) and Miss. Code Ann. §§ 23-15-801 through 23-15-815.") (emphasis added).[4]

The Court finds it extraordinarily significant, and frankly disconcerting, that the requirements Plaintiffs are indeed subjected to cannot be simply ascertained from a plain reading of the respective statutes, or even from the State's published guidance. Indeed, the State's best argument for the sole application of Chapter 17 is that the Court should turn to the canons of

---

[4] In the State's supplemental memorandum submitted following the motion for summary judgment hearing, the State contends that "[g]iven that no state court has found the Secretary's forms to be inconsistent with state law, any argument . . . that the Secretary was acting inconsistently with state law would, at best, create a question regarding uncertain state election law warranting abstention." Notably, this Court does not find that that Secretary's forms do not comply with state law, only that, unlike the State contends, the forms do not establish that the statutory framework is simple and straightforward.

construction to determine whether Plaintiffs such as these are regulated by the duplicitous, yet distinctive requirements of both Chapters 15 and 17.  As pointed out by Plaintiffs, however, resort to a canon of statutory construction presupposes that the statute's meaning is not readily ascertainable from a plain reading of the text.  See Bates v. United States, 522 U.S. 23, 29, 118 S. Ct. 285, 139 L. Ed. 2d 215 (1997)  (instructing that courts "ordinarily" should "resist reading words or elements into a statute that do not appear on its face.").  In Sampson, the Tenth Circuit plainly emphasized that,

> [t]he average citizen cannot be expected to master on his or her own the many campaign financial-disclosure requirements set forth in Colorado's constitution, the Campaign Act, and the Secretary of State's Rules Concerning Campaign and Political Finance.  Even if those rules that apply to issue committees may be few, one would have to sift through them all to determine which apply.

625 F.3d at 1259-1260.  In observing that such groups might well be required to consult an attorney, and that the cost of those attorneys' fees might well significantly overshadow the amount such groups initially intended to even spend, the Tenth Circuit took notice of the Supreme Court's admonition in Citizens United that "[t]he First Amendment does not permit laws that force speakers to retain a campaign finance attorney, conduct demographic marketing research, or seek declaratory rulings before discussing the most salient political issues of our day.").  Id. at 1260  (quoting Citizens United, 558 U.S. at 324, 130 S. Ct. at 889).

Where, as here, potential speakers might well require legal counsel to determine which regulations even apply, above and beyond how to comport with those requirements, the burdens imposed by the State's regulations are simply too great to be borne by the State's interest in groups raising or expending as little as $200.[5]  Contrary to the State's contention that Plaintiffs

---

[5] The State's supplemental memorandum also makes reference to the potential need for Pullman abstention.  Despite the late nature of the argument, the Court considers and rejects its

here failed to allege confusion regarding the potential dual application of the State's regulations, even the Plaintiffs' verified complaint averred, "[t]he burden of complying with Mississippi's regulations is compounded by the fact that there are multiple statutes contained in different sections of the Mississippi Code that one has to wade through to figure out all the relevant registration, reporting, and disclosure obligations." Unlike the regulatory scheme confronted by the Eleventh Circuit in Worley where Florida's laws required "little more if anything that a prudent person or group would do in these circumstances anyway," Worley, 717 F.3d at 1250, Mississippi's requirements are such that a prudent person might have extraordinary difficulty merely determining what is required. The Plaintiffs averments here indeed confirm that possibility as a reality.

As held by numerous circuits, in the context of a ballot-initiative, the State's interest is limited to the informational interest. That interest, in turn, is proportionately related to the amount spent or raised by Plaintiffs in furtherance of their speech. Sampson, 625 F.3d at 1259 ("while assuming that there is a legitimate public interest in financial disclosure from campaign organizations, we also recognize that this interest is significantly attenuated when the organization is concerned with only a single ballot issue and when the contributions and expenditures are only slight."). Here, the State places significant and onerous burdens on persons attempting to join together to raise or expend in excess of just $200. The Plaintiffs at

---

applicability. To invoke Pullman, the issue before the court must "involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal question." Moore v. Hosemann, 591 F. 3d 741, 745 (5th Cir. 2009) (internal citations omitted). Stated another way, "generally, Pullman abstention is appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." Id. Although the Court determines that the overlap between Chapters 15 and 17 increases the hardship placed on Plaintiffs, the Court finds the regulatory burdens too significant for the limited amount of speech involved here irrespective of any potential state rulings on the precise statutory applicability.

issue sought to place a newspaper advertisement in the local paper, distribute flyers, and purchase posters in support of a constitutional ballot measure, but were dissuaded by the burden of the State's requirements. Simply put, as applied to a small group attempting to expend minimal funds in support of their grass-roots campaign effort, the State's requirements, particularly coupled with the confusion surrounding those requirements, unconstitutionally infringe upon the First Amendment.

### 2. Individual Reporting Requirement

Plaintiffs next likewise challenge the reporting requirements placed on individuals essentially making independent expenditures in an attempt to influence the passage or defeat of constitutional ballot measures. Assuming initially that only Chapter 17 applies to individual persons expending in excess of $200 for the purpose of influencing the passage or defeat of a constitutional measure, such individuals are still faced with substantive requirements and potential penalties. As previously articulated, individuals *expending* in excess of $200 must file a report initially identifying the person's name, address, and telephone number. MISS. CODE ANN. § 23-17-51(2); MISS. CODE ANN. § 23-17-53(a). Further, they must provide the total amount of expenditures made during the covered monthly period, the cumulative total expended in support or opposition of that measure, and the name, street address, and amount of contribution for each person to whom a disbursement of greater than $200 was made. MISS. CODE ANN. §§ 23-17-53(c)(i)-(iii). Finally, despite the fact that it is a person's expenditures rather than acceptance of contributions that triggers the reporting requirement, individual persons must also include "[t]he total amount of contributions received during the period covered by the financial report, the cumulative amount of that total for each measure, and the name and street address of each person who contributed more than [$200] and the amount contributed." Id. at §

23-17-53(c)(iv).  Once again, those reports must continue to be filed until "all contributions and expenditures cease."  Id. at § 23-17-51(3).

Although individuals expending in excess of $200 are not required to file a statement of organization as they are not actually converted into a political committee, the Secretary of State's guidance makes no such distinction.  Instead, it instructs:

> Any person or group which accepts contributions or makes expenditures for or against an initiative . . . and those contributions or expenditures TOTAL more than $200 must register with the Secretary of State.  This registrations is accomplished by completing and filing with the Secretary of State a form entitled "Statement of Organization for a Political Committee."  Regardless of what a person or group calls itself, if it accepts enough contributions to total over $200, OR it spends over $200 on the initiative campaign, it must file the statement of organization and monthly financial reports.  Failing to do so results in fines of $50 per day and exposes the committee or individual to possible criminal prosecution.

Constitutional Initiative in Mississippi: A Citizen's Guide 11.

In addition to the less than cohesive guidance issued in regard to Chapters 17's textual requirements, would-be individual speakers must also at least initially examine Chapter 15 to ensure their conduct comports with that Chapter as well.  Although Mississippi now reassures that only Chapter 17 applies, the Secretary of State's guidance once again reiterates, "[n]o attempt to include all campaign finance disclosure requirements is made in this publication. Refer to the law in Miss. Code Ann. §§ 23-17-47 through 23-17-53 (1972) *and Miss. Code Ann. §§ 23-15-801 through 23-15-815.*" Id. at 10  (emphasis added).

Under Chapter 15, individuals are potentially governed under the independent expenditure provision.  MISS. CODE ANN. § 23-15-809.  That section provides that "[e]very person who makes independent expenditures in an aggregate amount or value in excess of [$200] during a calendar year shall file a [financial statement including the information required of

political committees].ˮ  Id.  However, the independent expenditure provision goes on to articulate that those reports are required to include "information indicating whether the independent expenditure in support of, or in opposition to, the candidate involved." Miss. Code Ann. § 23-15-809 (a).  Thus, it seems possible that such reports may not ultimately be required in the context of constitutional initiatives on that ground alone.  Nonetheless, navigating through the law certainly serves to increase the statutory burden placed on persons attempting to expend funds in support or opposition to a measure.

Once again, based on the minute level of speech involved, Mississippi's scheme is simply too burdensome to be carried by the State's informational interest in individual speakers attempting to expend in excess of only $200.  The potentially applicable statutory provisions present a myriad of pitfalls for the unwary, requiring in-depth analysis to determine which law applies, and then what the law requires and what it does not.  Further, the Secretary of State's guidance provides no relief; it at times further obfuscates the requirements, but never provides substantial clarification that might preclude the State's potential avenues of enforcement.  Thus, the Court finds that Mississippi's informational interest in persons expending $200 is too limited to carry the burden imposed by those regulations.  The Court therefore finds that Mississippi's current filing requirements are unconstitutional as applied to individual persons seeking to expend just over $200 in support or opposition to constitutional measures.

*3.  Individual and Political Committee Reporting and Recording Obligations*

Moreover, Plaintiffs also challenge a number of recording and reporting obligations imposed on political committees and individuals who raise or expend in excess of $200 to support or oppose a ballot initiative.  Specifically, Plaintiffs challenge Mississippi Code § 23-17-49(2)(a), which requires that political committees disclose the name and addresses of their

officers, and Mississippi Code § 23-17-53(a), which requires that individuals expending in excess of $200 provide his or her name, address, and telephone number. Additionally, Plaintiffs attack Mississippi Code § 23-17-53(b)(vii), which requires, in part, that political committees disclose the name and street address of each person from whom a contribution in excess of $200 was received during the covered period.

However, because the Court determines that groups and individuals, such as Plaintiffs here, who seek to expend just in excess of $200 in support or opposition of a ballot measure cannot constitutionally be subjected to Mississippi's current individual and political committee reporting requirements, the Court need not reach this contention. As articulated by the Supreme Court, "[e]mbedded in the traditional rules governing constitutional adjudicating is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the [c]ourt." Broadrick v. Oklahoma, 413 U.S. 601, 611, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Likewise, "[a] closely related principle is that constitutional rights are personal and may not be asserted vicariously." Id., 93 S. Ct. 2908 (citing McGowan v. Maryland, 366 U.S. 420, 429-30, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961)).

Under the overbreadth doctrine, and in the unique context of the First Amendment, those traditional standing requirements may be relaxed to permit litigants to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Id. at 612. The Plaintiffs here, however, have remained ardent that they are challenging Mississippi's regulations as they apply only to the present Plaintiffs and to similar small groups or individuals. In Plaintiffs' recent Notice of

Supplemental Authority, for instance, Plaintiffs articulated that a recently issued opinion "should not affect this Court's analysis of the Plaintiffs' as-applied challenge." Additionally, Plaintiffs' have specifically disavowed that they are bringing an overbreadth challenge, stating, "Plaintiffs are not, of course, making an overbreadth argument, they are making an as-applied challenge." The challenge to Mississippi's requirements regarding what political committees and individuals must actually report is therefore left for another day, to potentially be brought by a group that is governed by the substantive reporting and recording obligations Mississippi imposes on political committees and individuals receiving or expending higher amounts.

### III. Motion to Strike and Motion to Exclude

Finally, the Court turns to Defendants' Motion to Exclude and Motion to Strike. In particular, Defendants' Motion to Exclude seeks to preclude the expert opinion of David Primo. Defendants' Motion to Strike, on the other hand, seeks to bar the eighty-four paragraph declaration of Diana Stimpson, on grounds that she was not disclosed as a witness and her declaration would not qualify as a permissible summary under Rule 1006. The Court has considered all of the aforementioned arguments, however, and has determined that summary judgment is due in favor of Plaintiffs irrespective of any rulings on those motions. Therefore, Defendants' Motion to Exclude [46] and Motion to Strike [53] are deemed moot.

### CONCLUSION

For the foregoing reasons, the Court determines that the regulations Mississippi currently places on individuals and groups seeking to raise or expend in excess of $200 in support or opposition of a constitutional ballot measure do not survive exacting scrutiny under the First Amendment. Significantly, the Court does not hold that Mississippi may not regulate individuals and groups attempting to influence constitutional ballot measures. Instead, the Court holds only

that under the current regulatory scheme, which is convoluted and exacting, the requirements are too burdensome for the State's $200 threshold. The Court finds that the $200 threshold is simply too low for the substantial burdens that the statute imposes on groups and individuals. Thus, as applied to Plaintiffs, the State's group registration and individual reporting requirements are unconstitutional. Accordingly, the Court grants in part and denies in part Plaintiffs' Motion for Summary Judgment [42], denies Defendants' Motion for Summary Judgment [44], and finds Defendants' Motion to Exclude [46] and Defendants' Motion to Strike [53] moot.

SO ORDERED, this the 30th day of September, 2013.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**